GULF, COLORADO & SANTA FE RAILWAY COMPANY V. RUDOLPH SCHAWE.

Decided February 14, 1900.

**1. Parties—Joint Promises—Breach as to One—Railway Crossing.**

Upon a contract by a railway company agreeing with various parties conveying to it a right of way over their lands that it would keep up all necessary crossings, suit for breach of the agreement as to one of the tracts of land should be brought by the owner thereof, and the other joint promisees should not join.

**2. Railway—Crossings—Contract—Public Policy.**

A railway company is not required to fence its track; and its contract with a landowner to afford him an open crossing, with cattle guards and wing fences, instead of gates, is not violative of any declared public policy of the State.

**3. Contract—Construction by Parties.**

Where there is doubt as to the meaning of a contract, the construction placed upon it by the parties and their method of operating under it by way of performance, may be looked to in aid of its interpretation.

**4. Same—Railway—Open Crossing or Gate.**

A contract by a railway company with the owner of land through which the road runs "to keep up all necessary cattle-guards and road crossings," while not stating in express terms that the crossing should be kept open,—with cattle-guards and without gates,—may be treated as a contract to that effect, and its observance enforced by injunction, where such was the character of crossing maintained for eighteen years.

APPEAL from Washington. Tried below before Hon. ED. R. SINKS.

*J. W. Terry,* for appellant.

*Buchanan & Henderson,* for appellee.

FISHER, CHIEF JUSTICE.—This is an action for damages and for injunction, arising from an alleged breach of a contract entered into between the appellant and the appellee concerning the grant of a right of way over appellee's land and for the maintenance of open crossings for the convenience of appellee.

The case was tried before the court without a jury, and judgment rendered in favor of appellee for $250 damages, and perpetuating the injunction requiring the appellant to perpetually maintain an open crossing over its track, to and from the different parcels of appellee's land situated on each side of the track.

The trial court found the following conclusions of fact and law, which we approve and adopt:

"1. That on July 3, 1879, for the consideration of $189.37, paid by the Gulf, Colorado & Santa Fe Railway Company, Otto Schawe, Rudolph Schawe, A. G. Schawe, Sophie Schawe, and Mary Schawe, by deed in due form, conveyed to said railway company the right of way seventy-five feet wide through and over two tracts of land, containing respectively 257 acres and 34 7-10 acres of land, which land is described in said deed, recorded in book 8, page 277 of the deed records of Washington County, which said deed is as follows:

" '*The State of Texas, Washington County.*—This indenture witnesseth: That whereas, the Gulf, Colorado & Santa Fe Railway is desirous of constructing a railway pursuant to the terms of the charter, and whereas it is desired by said company to construct said railway through certain lands owned by us and described as follows: That tract of land in Washington County, about 4½ miles in a southerly direction from the town of Brenham, containing 257 acres of land, more or less, being the tract bought by our father F. Schawe from Wm. Schlottman; also the tract of 34 4-10 acres of land, adjoining the above described tract of land, that was conveyed by N. Holland and Z. Hunt to Adolph and Otto Schawe, by deed dated the '27th day of December, 1877, which is recorded in the records of Washington County, and to which reference is hereby made for a more perfect description of the land here referred to. And all other tracts or parcels of land now or hereafter to be owned by us or either of us, over or through which said railway company is now or may hereafter be located.

" 'The said railway company is to keep up all necessary cattle-guards and road crossings. Therefore, in consideration of the prospective increase in the value of our property by the construction of said railway, and for the further consideration of $189.37, to us in hand paid, the receipt of which is hereby acknowledged, we do hereby give, grant, and convey to said company, its successors and assigns forever, the

right of way seventy-five feet wide, through and over such parts of said land as may be deemed by said company most convenient; with full and perfect right to locate, construct, repair, and forever maintain and use its said road over the above described lands.

" 'Witness our hands at Brenham, this 3d day of July, A. D. 1879.

" 'Signed by Otto Schawe, Rudolph Schawe, A. G. Schawe, Sophie Schawe, Mary Schawe, Mrs. R. Schawe.'

"Which said deed was fully acknowledged and recorded, being filed for record July 10, 1879, and recorded in book 8, p. 277, of the deed records of Washington County.

"2. That the plaintiff, Rudolph Schawe, is the sole and exclusive owner, in fee simple, of the land described in his petition, and that the same is his homestead.

"3. That after building its track across said lands, the defendant in 1880 fenced its track on both sides. That the fence and right of way fences cut the plaintiff's pasture, containing about thirty-seven acres of land, in two parts, about thirty-three acres on the east side and about four acres on the west side of the track. That when the defendant company fenced its track through the plaintiff's said inclosed pasture in 1880, it constructed a road crossing, with the necessary cattle-guards and wing fence, inside the plaintiff's said pasture at a place then pointed out by him, which crossing was constructed for the plaintiff's use and was the only private crossing made within the inclosed land. That said crossing, as constructed in 1880, was an open crossing with the necessary cattle-guards and wing fences and was without gates or bars, and was so maintained by the defendant's company at its expense, from the time the defendant fenced its track in 1880 up to the 12th day of January, 1898, during all of which said time the plaintiff occupied his said farm and used said pasture without change from the condition it was in when said track was fenced in 1880 for grazing his stock, consisting of some cattle and work stock. That the larger portion of said pasture is on the east side of said track, the plaintiff's dwelling, cultivated land, lots, barns, etc., being on the west side of the track. That the tank in his pasture is on the east side of the track, and the crossing on the defendant's track was necessary for the passage of the plaintiff's stock from his house to the larger portion of his pasture, where they grazed and could get water. That said crossing was, during all of said time, used by the plaintiff as a road to reach the public road leading to the city of Brenham, the county seat of Washington County, which was the plaintiff's trading point, and same was the only wagon crossing inside of the plaintiff's said inclosure, whereby he could reach said public road.

"4. That on the 12th day of January, 1898, the defendant, without the knowledge or consent of the plaintiff, removed the cattle-guards and wing fences between said cattle-guards and right of way fences at said crossing and erected swinging gates across said opening, thereby

closing said crossing with gates to be opened and shut by parties passing over said crossing and track. That said crossing was closed by said gates over the protest of the plaintiff, and was so kept closed by said swinging gates up to about the 1st day of November, 1898.

"5. That before the filing of this suit, and while the controversy as to the closing of said crossing by gates was pending, and in correspondence with reference thereto, on May 24, 1898, in response to a demand for an open crossing with cattle-guards, the defendant's attorneys wrote the plaintiff's attorneys as follows:

" 'Aside from the question of damages for stock killed on the same, it has been found· from experience that open crossings are dangerous. It has been the policy of this company for some time to gradually close all road crossings on the road which it is entitled to close, by gates or otherwise. Even under the crossing statute of 1887, which could have no application in this case, since the right of way was acquired prior thereto, the Court of Civil Appeals at Dallas held that a railway company could establish gates. See Railway v. Burgess, 41 S. W. Rep. It is the wish of the company to get along harmoniously with its neighbors and to avoid litigation as far as practicable, and the constant reduction in the volume of litigation shows that it has made an honest effort in that direction. In order to bring the present matter to a conclusion, if Mr. Schawe will agree to keep the gates closed, I will agree to recommend the company to put in surface guards with necessary wing fences. This will obviate the objection which he now makes, that when driving cattle across the track they run up and down the right of way. Of course, this offer is made on the basis of there being a settlement of all controversies.'

"Which offer was, by the plaintiff, through his attorneys, on May 26, 1898, rejected by a letter of said date, wherein the plaintiff, through his attorneys, said:

" 'Yours of the 24th instant to Mr. W. C. Henderson of our firm, in regard to demand made by Rudolph Schawe for a crossing on his place, has been duly received. Mr. Schawe has been in our office to-day, and we presented your letter to him. He instructed us to reply that no proposition will be entertained by him except an offer to remove the gates and restore his crossing to the condition in which it was kept and maintained by your company prior to the first day of January, 1898.'

"That plaintiff gave notice to defendant to replace said cattle-guards, wing fences, and opening in same condition as they were before they were moved.

"6. That thereafter, and since the filing of this suit, on or about the 28th day of September, 1898, the plaintiff and the defendant entered into the following agreement, to wit:

" 'In consideration of the plaintiff consenting to a continuance of this case, it is agreed between the parties:

" 'First.—That the defendant will establish cattle-crossing with the necessary wing fences, without gates, at the point of crossing described

in plaintiff's petition, and maintain the same. until the termination of this case.

" 'Second.—This shall be done without prejudice to the rights of either party, defendant reserving the right, after the termination of the case, to remove the cattle-guards and re-establish the gates, either or both, in the event that it shall be decided that it has the right to do so.

" 'Third.—The fact that the open crossing is maintained pending the suit may be shown as affecting the amount of damages, if any, to which plaintff may be entitled.'

"In pursuance of which said agreement, the said gates were removed and the open crossing restored as it existed before the gates were put in, this being done about the 10th day of November, 1898.

"7. That the removal of the cattle-guards and wing fences and the closing of said crossing by gates, made it necessary for the plaintiff each day and two or three times during each day, while the same was closed by gates, to drive his horses and cattle back and forth from his house to the large portion of his pasture, and in so doing it required the services of two or three persons to keep the cattle from going in on either side up and down the right of way, all of which was unnecessary while said crossing was open and with cattle-guards and wing fences and without gates, and said extra trouble in crossing his stock resulted in loss of time and expense to plaintiff amounting to between $20 and $30 per month from January 12, 1898, to about the 1st day of November, 1898. That by reason of said extra trouble and expense, the plaintiff sustained damages in the sum of $250.

"8. The following is a correct map of the plaintiff's premises, showing where the track of the defendant railway crosses the plaintiff's farm and how it runs through his said pasture, the inclosure in which the crossing in question is situated, and showing the location of his farm and dwelling and outhouses, etc., as made by an actual survey of the premises, to wit." [Here follows map of plaintiff's farm, pasture, etc.]

From the foregoing facts, the court concludes as matter of law:

"First.—That the clause in the right of way deed made in 1879, stating that 'the said railway company is to keep all necessary cattle-guards and road crossings,' means that the railway company was to put in and maintain at its own expense an open crossing, without gates, and free from any obstruction whatever, with the proper cattle-guard and wing fences. This construction as to what was meant by the parties to said deed by the clause quoted above is strengthened by reason of the construction placed by the railway company upon the said clause in said deed for a number of years immediately thereafter, the company, shortly after the execution of said deed, in fencing its track, put in an open crossing and cattle-guards at said place, and so maintained the same from the time it built its fence in 1880 to January 12, 1898.

"Second.—That by the removal of said cattle-guards and wing fences

and closing said crossing by the erection of swinging gates in the line of the right of way fences, to be opened and shut by parties crossing over said railway track at said crossing, the defendant railway company committed a breach of the obligation assumed by it in said deed, 'to keep up all necessary cattle-guards and road crossings,' and deprived the plaintiff of a right given to him by said deed, and the said railway company is liable to him for the damages he has sustained by reason thereof.

"The judgment of the court accordingly is that the plaintiff Rudolph Schawe recover from the defendant, the Gulf, Colorado & Santa Fe Railway Company, his damages, found by the court to be $250, and that the said railway company is hereby enjoined from closing said crossing with gates or other obstruction, and shall restore the same as an open crossing and maintain the same as an open crossing with the proper cattle-guards, as it existed prior to January 12, 1898, and to this end and for that purpose the plaintiff is granted a writ of injunction in the terms of the law."

The contract sued upon was made between the railway company and the appellee and other parties, who it seems claimed land along the right of way of the appellant's road. The appellant demurred to the petition because the other parties in the contract did not join in the suit with appellee. The court overruled the demurrer.

There was no necessity for joining these parties. The contract in the form in which it was made was evidently for the convenience of each of the parties thereto; and it appears from the averments of the petition that none of the other parties have any interest whatever in the land claimed by the appellee. The appellee being the owner of the premises which the breach of the contract affected, could maintain the action. Parties that had no interest in the property or the use thereof could not join in the action. There was no error in overruling the demurrer.

It is next contended that the court erred in refusing to sustain demurrers addressed to the petition on the ground that the contract sought to be enforced was against public policy, for the reason, as contended, in the interest of humanity and the protection of life and limb, the railway company should be left free to fence its track, and the policy of the law requires this to be done.

We can not agree with the appellant in this view of the question. There is no statute in this State requiring railway companies to fence their tracks. There is a statute, which is permissive in terms, which authorizes this to be done. In the statute where this right is conferred, it says, in effect, that if the track is properly fenced, the railway company shall not be liable for stock injured or killed on the track. This provision of the law, it seems, is for the protection of the railway company. It is not bound to take the benefit of the statute, and if it sees fit, it can leave its track unfenced. It follows from this that what the railway company had the right to do, it could bind and obligate itself

that this would be done. The contract and the construction placed upon it by the trial court, in the light of the facts, is that at the particular place the railway company agreed that it would leave the track open. This it had the right to do in the absence of any agreement, and there is no statute or defined policy existing in this State that would prevent the railway company from executing this privilege.

In acquiring the right of way, it was one of the express considerations that the railway company would maintain crossings at convenient points. The contract did not expressly state that the crossing should be open and unfenced, but the railway, in the absence of a contract, in putting in the crossing, could have left it in that condition if it saw fit to do so; and having agreed that this should be done it should perform its contract, as it could be required to do in any case where it has entered into a contract which it is authorized to execute concerning any of its business.

What we have just stated may also be considered an answer to the appellant's seventh assignment of error.

In answer to the fifth and sixth assignments of error, it may be stated that the facts in the record warrant the conclusion of the trial court. The contract does not in express terms state that the crossing should remain open, and here is some doubt as to its meaning in this respect, but the construction placed upon the contract by the parties to it, and their method of operating under it in the way of a performance, may be looked to in aid of its interpretation. Williams v. Clark, 140 Mass., 238. For years prior to the time of the breach as claimed by the plaintiff, the railway company maintained an open crossing, and the facts show that its conduct in this respect was adopted and acted upon by the appellee; and the track and the crossing in that condition was maintained by the railway company, and operated, used, and enjoyed by both parties for about eighteen years, when the railway company, over the protest of the plaintiff and against his consent, by gates, closed up the way across the track.

We think the facts on the whole authorized the judgment of the court below; therefore it is affirmed.

*Affirmed.*

Writ of error refused.