## Missouri, Kansas & Texas Railway Company of Texas v. Nathan Anderson.

### Decided May 18, 1904.

**1.—Right of Way—Deed—Boundaries.**

The limits embraced in a conveyance of right of way for a railroad are to be determined by the calls in the deed and evidence is not allowed to extend same by showing an actual survey of the boundary beyond the limits called for.

**2.—Same—Deed Construed.**

See deed construed to limit the right of way conveyed thereby to a line twenty-five feet from the center of the grantee's track as located, and not to be controlled, in its effect, by proof that the actual survey was elsewhere.

**3.—Charge—Intention of Parties to Deed.**

Submitting to the jury as a question of fact the intention of parties to a deed, without other evidence thereof than the deed itself, was not error where the verdict involved no other finding as to the intention and effect of the deed than the court should have drawn from its terms as matter of law.

**4.—Right of Way—Conveyance—Main and Side Tracks.**

A mere conveyance of right of way for a railroad over the grantor's land carries only such rights as would be acquired by condemnation under article 4445, Revised Statutes, and authorizes the construction thereon of main and necessary side track, but not of machine or repair shops or switching yards.

**5.—Same.**

Circumstances attending conveyance of right of way held to strengthen the presumption that it conveyed no right to construct buildings or switching grounds.

**6.—Railway—Right of Way—Use for Shops and Switch Yards.**

The construction of shops and switching yards upon land adjacent to the home of another and over which the railway has acquired only a right of way for its main and side tracks, whether considered as a private nuisance or a public use, gave a right of action for the depreciation in the value of such adjacent property by such additional use, and also for the personal inconvenience occasioned to the owner and his family by the noise, vibration, gases, smoke, etc.

Appeal from the District Court of Hunt. Tried below before Hon. H. C. Connor.

*T. S. Miller* and *Perkins, Craddock & Wall*, for appellant.

*R. L. Porter* and *Looney & Clark*, for appellee.

FISHER, Chief Justice.—The appellee, the plaintiff below, in his suit against the appellant states in his petition that he is the owner of lots 6 and 7 in block 7 of the Wright addition to the city of Greenville. The lots are described as beginning at a stake, the intersection of the north boundary line of the right of way of the old East Line & Red River Railway Company, subsequently conveyed to the Sherman, Shreveport & Southern Railway Company, and now, at the time of filing the suit, operated and controlled as a part of the appellant's line of road, which said north boundary line intersects the west boundary line of Texas Street; thence north 125 feet; thence west 331 2-3 feet; thence south to the line of said right of way; thence east to the place of beginning. The above described land was at the time the suit was filed

and before occupied by the plaintiff and his wife and children as their homestead; and that the lots in question are in the residence portion of the city of Greenville, and are valuable for residence purposes only. That at the time of and before the conduct of the defendant, as complained of, the property was worth $1750, and is located just north of and adjoining what was once defendant's main line of railroad; that before the changes made in the operation of the road and the use of appellant's right of way, the line of road was composed of only one track running immediately south of the plaintiff's land, and was used only for the passage of freight and passenger trains, in the usual and ordinary way; but was not used as any part of the yards of defendant's road, or for the purpose of switching or holding or making up trains thereon; that some time during the summer of 1901 the defendant began the laying out, construction and building of yards at and near the city of Greenville on an extensive scale, laying out and building same beyond the plaintiff's land; that it changed the natural lay of the land adjacent to plaintiff's property, and changed the former grade of its roadbed and track by and beyond the plaintiff's land, by piling up dirt, shoveling and scraping and excavating and taking away dirt from the south side of the plaintiff's land, and made its roadbed at that point much deeper and wider, and it laid down another main line and several switches and side tracks south of and near plaintiff's property, where no switches and side tracks had before existed; that just before the changes in defendant's roadbed and track before mentioned, the defendant built a large coal chute just east of plaintiff's land and also erected a large overground water tank, at which coal chute and water tank the defendant's engines and trains were filled with water and coal. That the main yards built by defendant are located southwest of the plaintiff's property, and that in connection with said yards the defendant built, just south of and near plaintiff's land, switch-stands and blocks, sidings and switches, used as approaches to and from the main line leading off to the switch yards on one side and the coal chute and water tank on the other; and that at these points are located quite a number of switch-stands and blocks, just south of and near plaintiff's property. After the completion of these improvements the defendant has had the same in full operation, and keeps and maintains about three regular switch crews in and about its yards, sidings, coal chutes, water tanks and depots, each crew having engines and tenders, and said crews with the engines and tenders are continually at work, day and night, and have been since the yards were built, switching and making up trains and going to and from the yards, coal chutes and water tanks,—all of this in addition to the regular trains that pass over the main lines of said road. That the work of said crews in the operation of said trains, engines, etc., makes and causes great and unusual noises, the engines emitting great quantities of smoke, dust, cinders and soot and offensive odors, causing plaintiff's property and dwelling to shake and vibrate; all of which things envelop and spread over and affect the lots and

premises of plaintiff, and by reason of such use and things as aforesaid, the property has been rendered uninhabitable and almost useless as a place of residence, and that said dust, cinders, soot, gas, noxious vapors, vibrations and noises permeate plaintiff's house, residence and premises, and disturb him and his family, and that the dust and cinders settle upon and render soiled and filthy the persons and objects on said premises, contaminate the roof of plaintiff's house and affect the purity of plaintiff's drinking water in his cistern; and that by reason of all of said facts the plaintiff's premises have been rendered almost valueless and are not worth on the market over $500. That in the widening of said roadbed and tracks the defendant wrongfully and without authority and against the plaintiff's consent, took and appropriated a strip of the plaintiff's land, a part of the lots above described about fifteen to twenty feet wide, running the full length of the lots, and now wrongfully holds possession of said strip, and defendant has converted the same to its own use, to plaintiff's damage in the sum of $500, the reasonable and market value of said strip so appropriated; and that by reason of the things and acts of defendant, and the conduct as hereinbefore alleged, plaintiff and his wife have been subjected continually, day and night, to great physical and mental discomfort, and have been vexed, harassed and annoyed to a degree almost insupportable, on account of said noises, vibrations, noxious vapors, gases, smoke and cinders, dust and soot, that continually envelop and permeate and affect plaintiff's dwelling and premises, to their damage in the sum of $500.

The defendant for answer demurred to plaintiff's petition, and generally denied the allegations therein contained; and further alleged that if any damages had been sustained by the plaintiff, that the cause of action was barred by limitation, and that if the plaintiff had suffered any damages, they were occasioned and contributed to by the plaintiff's own negligence and want of ordinary care; and that of the defects and causes that produced the injuries, if any were produced, the plaintiff had notice, or by the exercise of ordinary care could have had notice in ample time to avoid the same.

Verdict and judgment in the trial court resulted in favor of appellee for the sum of $450.

The facts are as follows: M. H. Wright in 1880, and after that time, was the owner of the John Gillespie and John Hart surveys of land, adjoining the city of Greenville. M. H. Wright and N. E. Wright, his wife, are common source of title, the appellant and the appellee both holding under them. On the 30th day of January, 1880, Wright and wife executed to the East Line & Red River Railroad Company the following conveyance:

"State of Texas, Hunt County. Know all men by these presents that we, M. H. Wright and his wife N. E. Wright, both of said county and State, for and in consideration of one dollar, to us in hand paid by the East Line & Red River Railroad Company, the receipt of which is hereby acknowledged, and for the further consideration that the

said railroad company will locate and construct its railroad on, over and across the following tracts of land, situated in the county of Hunt in said State of Texas, and known and described by metes and bounds as follows, to wit: All that part of the John Gillespie and John Hart headrights of land now owned by us, lying west of the town of Greenville, being the land now used and occupied by us as a homestead.

"Provided, however, that said roadbed be located and constructed on, over and across that part of said tracts as indicated by the last lineal survey made by said company prior to this date, which survey is on and very near the S. B. line of said John Hart headright; therefore we by these presents give, grant, convey and relinquish unto the said railway company, the full right of way over all of said tracts of land for the purposes of said railroad forever. The right of way shall be in width the space of twenty-five feet on each side of the center of the located line of said railroad."

April 19, 1889, the charter of the East Line & Red River Railroad Company was forfeited in a suit by the State; a receiver was appointed and all of its property, rights and franchises were conveyed to the Sherman, Shreveport & Southern Railroad Company; and that thereafter on the 7th day of May, 1901, the appellant herein duly and legally acquired all the rights, property and franchises of the Sherman, Shreveport & Southern Railroad Company, and now owns all of such property, rights and franchises. There are other deeds to the East Line and Red River Railroad Company and to the appellant for other properties than that described in the first deed mentioned, which other property is used by the appellant for yard purposes, etc.

Plaintiff's title is connected with a partition deed between Mrs. Wright, the surviving widow of M. H. Wright, and the heirs at law of M. H. Wright, dated the 11th of June, 1884, in which block 7, where is located plaintiff's land, was set apart to Burchard Wright, the description being as follows: "Beginning of the west boundary line of the original survey 260 1-5 vrs. south of the center of Washington Street; thence east 359 varas; thence south 363 1-10 varas; thence 150 varas to the west side of Texas street; thence south 178 varas to the railroad right of way; thence west with said right of way 509 varas to the beginning."

August 31, 1894, Burchard Wright conveyed to N. A. McLeod lot 7, block 7, which deed, among other calls in describing the land, begins at a stake at the intersection of the north boundary line of the right of way.

May 7, 1895, McLeod conveyed this lot to one J. F. Pauls. May 8, 1895, Burchard Wright conveyed to Pauls lot 6 in block 7. July 13, 1895, Pauls conveyed lots 6 and 7, block 7, to James Armistead. October, 1899, Armistead conveyed the same land to Jas. Rowsey. November 11, 1900, Rowsey conveyed to M. B. Johnson. March 6, 1901, M. B. Johnson conveyed to the plaintiff.

From 1881 up to 1901 there was located on the right of way only

one track which was used for freight and passenger trains, as a part of the main line of the road. In 1901, the appellant laid on the original fifty-foot right of way adjoining the plaintiff's lot, one additional main track and two side tracks, which side tracks are used as a part of the appellant's yard system, which adjoins the main line of the appellant's road; said yards consist of about eighteen or twenty acres. The original main track and the new main track and the two side tracks, are all located upon the fifty feet that was originally granted as a right of way. These side tracks are put there and operated and used in the manner substantially as stated by the plaintiff in his petition, and the use thereof has damaged the plaintiff's property in the manner substantially as alleged; and has caused the discomforts, annoyance and inconvenience to the plaintiff, in the use and occupation of his premises, as alleged.

It appears from the facts that these side tracks were located, operated and used by the appellant for its convenience in the use of its yards, and as connecting its yards with its main line of road.

It also appears from the evidence that the appellant did, as alleged, encroach upon the plaintiff's lot and appropriate a small strip of the plaintiff's land.

The usual width of land required for the main line of a railroad is 100 feet. A railroad requires more land where they are going to build yards than they do for the ordinary line of road. It could not build a system of yards on a right of way 100 feet wide. These latter facts are established by the evidence of appellant's engineer. The coal chute, water tank, yards and side tracks have been built since May, 1901.

Appellant's seventh assignment of error complains of the charge of the trial court which submitted the issue to the jury as to the right of appellee to recover the value of the strip of land appropriated by the appellant, on the ground that this charge did not furnish the jury any rule by which they could determine the location of lines in the ascertainment of boundaries. There is no complaint made that the court refused any charge requested by the appellant upon this subject. The court in effect instructed the jury that if the defendant took and appropriated to its own use a strip of land off of the south side of the plaintiff's premises, and that such strip belonged to the plaintiff, then the latter would be entitled to the reasonable market value of the strip so appropriated.

The court also gave a requested instruction by appellant on the question of boundary. On the theory presented by this special instruction the jury found against appellant. The verdict being general, the effect was to determine that the plaintiff was the owner of the small strip of land appropriated by the defendant, and that the same was a part of the lots conveyed to the plaintiff. The appellant contends that its right of way opposite the plaintiff's lots extends further north than twenty-five feet from the center of the original track lo-

cated by the East Line & Red River Railroad Company. The deed under which the appellant holds, which was executed on the 30th of January, 1880, to the East Line & Red River Railroad Company, expressly states that the right of way shall be in width the space of twenty-five feet of each side of the center of the located line of said railroad. There is no other descriptive matter contained in the deed that controls that part of it just quoted. It is apparent that the express purpose was to convey a right of way fifty feet in width; that is, twenty-five feet on each side of the center of the railroad track. The deed to the plaintiff calls for the line of the right of way. Therefore the plaintiff's boundary line will extend to a point within twenty-five feet of the center of the track.

The descriptive matter offered in evidence by the appellant, and which is relied upon to control the express description stated in the deed, is not by the terms of the right of way deed called for as a matter of description, or as a part of the field notes tending to identify the land. The contention is that the footsteps of the surveyor who located the right of way could be found at places other than that called for in the descriptive matter contained in the deed; and to go to this point would extend the right of way some distance further north than twenty-five feet from the center of the track.

The difficulty that lies in the way of supporting this contention is that the objects sought to be established by the appellant, as found upon the ground as indicating the boundaries of the right of way, according to its theory, are not called for in the field notes of the deed under which it holds; and in cases of this character the rule seems to be well established that lines and boundaries can not be constructed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor, when there are no calls in the grant for such objects. Anderson v. Stamps, 19 Texas, 460; Ratliff v. Burleson, 7 Texas Civ. App., 624, 26 S. W. Rep. 1004, and cases there cited.

What we have said in effect disposes of appellant's eighth, ninth and tenth assignments of error. Our construction of the deed limits the appellant's right of way at the point in question opposite the plaintiff's lots to fifty feet; that is, twenty-five feet on each side from the center of the main line of its original track. Therefore, the assignments just passed upon present no reversible error.

The court in presenting the issue as to the damages that resulted to the plaintiff's property by reason of the depreciation in the value thereof, arising from the use and operation of the side tracks in the manner as stated in the petition, gave the following charge: "You are instructed upon the second issue, that if you believe from the evidence that at the time M. H. Wright and wife conveyed the right of way to the East Line & Red River Railroad Company, it was contemplated by the parties to said deed that said right of way should be used by the railroad company for the construction of its regular traffic track, and the

operation of its regular passenger and freight trains in the usual and ordinary way, in and out of the city of Greenville, and that said right of way should not be used by the defendant company as any part of its yards for the purpose of switching and making up cars; and if you believe that some time during the summer of 1901 the defendant built additional switch tracks next to plaintiff's property for the purpose of switching cars and making up trains; and if you believe that defendant has used said switch track for the purpose of making up trains and for the purpose of passing to and from its coal chutes, yards and depot; and if you believe plaintiff's property has been damaged by such additional use, if any, of such right of way, then in that event you will find for the plaintiff on this issue, and assess his damages at the difference, if any, in the cash market value of plaintiff's land immediately before and immediately after the construction of said switches."

This charge is objected to by the appellant for the following reasons: (1) Because there was no evidence offered upon the trial of the case showing what was contemplated by the parties to the deed; (2) that plaintiff and defendant holding under a common source, M. H. Wright and wife, who by their deed conveyed the right of way to the East Line & Red River Railroad Company prior to the time that the plaintiff acquired any title in the premises, the former could not recover any damages resulting from a depreciation in the value of the property in question by reason of the use of the side tracks located upon the right of way, as such side tracks and the use thereof was authorized by virtue of the terms of the right of way deed, and all damages that might result therefrom were satisfactorily accounted for and settled in the execution of the original deed of the common vendor; (3) that the legal effect of such deed could not be controlled by evidence showing that the parties contemplated that a different effect should be given to the deed from that stated on its face, that the effect of the deed was to convey a right of way, which carried with it, if not expressly, by implication, the right to locate the side tracks where they were located, and use them in connection with the operation of its yards.

We are of the opinion that the submission of the issues presented in this charge to the jury for determination was not erroneous, because the trial court, under the evidence, as a matter of law, should have given the same effect to and construction of the deed as was placed upon it by the verdict of the jury.

It is apparent from the terms of the deed to the East Line & Red River Railroad Company that the purpose and intention was to grant an easement in the nature of a right of way,—just such a way as the railroad company could have acquired in the event condemnation proceedings had been resorted to merely for the purpose of acquiring a right of way. It is clear from the term of the deed that the easement was intended merely as a right of way, and when the meaning of this expression is determined and ascertain by the manner in which

it is used and employed in articles 4445 and 4483, Sayles' Civil Statutes, it is apparent that the intention and purpose was that a grant of right of way simply conveyed or authorized the right of the railway company to thereon locate its line of road together with such side tracks that may be necessary to the operation of the same. The two articles of the statute quoted seem to contemplate that a condemnation merely for a right of way does not embrace or imply a use for machine or repair shops or yards, but that when such things are required or necessary, property should be acquired or condemned for such purposes. It is well settled that when land is condemned for one purpose it can not be applied to another purpose without making compensation. Foster v. Chicago R. I. & T. Ry. Co., 10 Texas Civ. App., 476, 31 S. W. Rep., 529, and cases there cited.

The deed itself grants a right of way of twenty-five feet in width on each side of the track, and there is nothing upon the face of the deed which indicates or empowers any additional use of the land than that of mere right of way purposes. As an incident to the use, of course it is conceded that the railway company could, as a part of its main track, construct switches and side tracks necessary in the operation of the main track. San Antonio & A. P. Ry. Co. v. Faires, 26 S. W. Rep., 82; East Tennessee V. & G. Ry. Co. v. Telford, 14 S. W. Rep., 776.

The side tracks and the use thereof of which the plaintiff complains were a part of the yard system of the appellant, and were not used and operated as a part of the main line of road. And we are of the opinion that the mere grant of an easement for the sole purpose of a right of way, as indicated by the terms of this deed, did not authorize an additional use by the appellant of the right of way for yard purposes. But, however, if we are mistaken in the construction that we have placed upon the deed, and the effect that we have given to it, we are then of the opinion that the question as to its effect, as submitted by the trial court, was properly left to the determination of the jury.

If the meaning of the term "right of way," when employed in a conveyance directly from the owner to the railway company, is to be construed and its meaning determined without the aid of the statute, then the expression has no definite and fixed meaning in law; and where there is nothing giving it character and effect upon the face of the instrument, the intention of the parties may be looked to in the light of the surrounding circumstances, in order to determine the sense in which the expression is used, and the extent of the use intended to be granted. We may to some extent understand what is meant by the expression "right of way" when used in a deed by the owner of a premises to a railway company,—that is, that an easement is granted to the railway company to construct its road over the grantor's premises, and to operate the same in the usual and ordinary way, but beyond this, we can not determine the extent of the use to which the land may be put by the grantee. It is the limit or extent of the use that makes the grant

doubtful, where the only words that imply a use is the expression "right of way purposes;" and in determining the effect of grants of this character the rule that you may look to the surrounding circumstances, in order to ascertain the intention of the parties, is particularly applicable.

It has been settled that a grant of a right of way must be construed reasonably and in the light of the surrounding circumstances, so as to ascertain the intention of the parties. Newago Manfg. Co. v. Railway Co., 64 Mich., 115; Louisville & N. Ry. Co. v. Brinton, 58 S. W. Rep., 604; Donisthope v. Railway Co., 43 Am. and Eng. Ry. Cases, 583, and 23 Am. and Eng. Ency. of Law, 2 ed., 697. It is not meant by this that the clear intention as expressed in the face of the deed, or the meaning which the law attaches to the words that are used in the instrument, can be controlled by evidence of extrinsic facts; but when the terms of the grant that are employed to express the supposed intention of the parties are ambiguous, or of doubtful meaning or application, the surrounding facts and circumstances may be looked to. And in determining this intention, as an aid to a correct interpretation, the construction placed upon the contract by the parties, and their method of operating under it by way of performance, may also be looked to. Gulf C. & S. F. Ry. Co. v. Schawe, 22 Texas Civ. App., 599, 55 S. W. Rep., 357. A writ of error was refused in the case just cited.

There is in this record no direct evidence, other than as indicated by the face of the deed, as to what was the intention of the parties to that instrument at the time of its execution; but the facts and circumstances, such as the situation of the property, its proximity to the city of Greenville and its value for residence purposes, and the narrow limit of the right of way, reduced from the usual width of 100 feet to 50 feet, and the evidence to the effect that yards could not be constructed upon a right of way of 100 feet, is evidence of surrounding facts and circumstances, showing that it was the intention of the parties, in the use of the expression "right of way," not to grant an easement in the right of way in question for its use for yard purposes. It is difficult to suppose that the grantor or the grantee at that time ever intended or contemplated that that narrow strip of land could or would be used by the railway company for the purpose of locating upon it its yards or shops or works of that character; and it is just as reasonable to put a construction upon the instrument, by virtue of the expression "right of way" that would authorize the use for yard purposes, as for the other valuable use of devoting the right of way to building along the side of the track shops and other buildings that a railway company might find useful or necessary in the operation of its road.

Furthermore, it appears from the evidence that for many years prior to the time that the appellant used the right of way in connection with the operation of its yards, it had only been employed and used by the railway company in the operation of its main track, for

36 Civ.—9

the usual number of freight and passenger trains. This fact is serviceable to be considered as indicating that the parties themselves had placed upon the right of way deed the same construction as contended for by the appellee.

We are of the opinion that there is enough in the facts as found in the record to justify the conclusion that the use of the right of way for yard purposes was unauthorized, and was not contemplated and was not within the intention of the parties at the time that the right of way deed was executed; and that it was never contemplated by the parties that the compensation received by the owner of the grant at the time it was delivered that the consideration of the conveyance of the right of way easement should be a satisfaction of such damages as might result to his premises for the additional use of the right of way of the nature and character complained of in this case.

In Louisville & N. Ry. Co. v. Brinton, 58 S. W. Rep., the court in passing upon the right of use by a railway company of its right of way says: "It is urged that as Reiley, through whom the appellant obtained its right of way, at that time owned the land now owned by Brinton, being a part of the tract from which the right of way was taken, the railroad company had the right to build its embankment and culvert in the manner described; that although the injuries resulted by reason thereof, the appellee is in the same condition as would have been the original proprietor, and that the injury resulting was one for which no remedy exists. The deed is one which simply purports to convey the right of way to appellant. There is nothing in it which gives the appellant the right to make an unlawful use of the property conveyed by it. The vendor had the right to rely upon the fact that the railroad would be constructed so as not to damage him by its wrongful act. It did not confer upon the appellant the right to accumulate water and discharge it in an artificial channel on the remaining part of his land, and thus produce a serious damage. No such damage was in the contemplation of the parties at the time the deed was executed; neither does it relinquish a claim for damages on account of such an act."

Treating as we do that the additional use for side track purposes of the right of way in connecting with its yards was unauthorized, and that no compensation was received therefor by the vendor in the right of way deed, still the question might arise and may be one important to be decided whether such additional use was a public or private use by the railway company. If the former, then such use is controlled by article 1 section 17, of the Constitution, that provides that no person's property shall be taken, damaged or destroyed or applied to a public use without adequate compensation. Gainesville H. & W. Ry. Co. v. Hall, 78 Texas, 471; Fort Worth & R. G. Ry. Co. v. Downie, 82 Texas, 385; Rosenthal v. Taylor B. & H. Ry. Co., 79 Texas, 325, and other cases that may be cited, construe this provision to mean that there need not be an actual taking or destruction or application of the property

to public use, but that damages sustained to adjacent property are recoverable where no compensation is made at the time of the acquisition of the right of way or of its use. These cases, together with the recent case of Missouri K. & T. Ry. Co. v. Calkins, 3 Texas Law Journal, 684, 9 Texas Ct. Rep., 791, in which a writ of error was applied for and refused, predicate the damages sought to be recovered upon facts similar to those that exist in this case. And in these cases it is held that the damages sustained to the property of the adjacent owner was recoverable, and the fact that the property was used for a lawful purpose, and that in the operation of its trains and engines, and the creation of noises, dust, smoke, etc., the railway company had observed proper care and was free from negligence, was no defense.

If the additional use of the right of way for yard purposes was a matter that did not concern the public, but in its use the railway company acted in its private capacity, then such use as affecting the value of plaintiff's property, or the beneficial enjoyment of the same as a residence, as shown by the facts of this case, would amount to a private nuisance for which the plaintiff could recover his damages.

In treating of a similar subject, the Supreme Court of Tennessee, in Louisville Ry. Co. v. Jacobs, 61 Law. Rep. Ann., 192, uses this language: "But over and beyond this, we think the corporation in selecting a place for its roundhouse acted in a private capacity and is responsible for the injurious consequences which may result from its use." This is the view taken in Beseman v. Pennsylvania Ry. Co., 50 N. J. L., 235, 13 Atl. Rep., 167. It is there said: "A railroad in selecting a place for repair shops and engine houses, acts altogether in its private capacity. Such location is a matter of indifference to the public. Consequently, with respect to such act, the corporation stood on the footing of an individual, and was entitled to no superior rights of immunity. The authority to construct such works did not authorize it to place them where it might think proper in the city, without reference to the property rights of others. Grants of power to corporate bodies like these can give no license to use them in disregard of the rights of others, and with immunity for their invasion." The same doctrine is announced in Baltimore & P. Ry. Co. v. Fifth Baptist Church, 108 U. S., 317, and Cogswell v. New York N. H. & H. Ry. Co., 103 N. Y., 10, 57 Am. Rep., 701, 8 N. E. Rep., 357.

In City of Fort Worth v. Crawford, 74 Texas, 407, it is held that where the nuisance arises from conduct for its private advantage, the city would be liable and responsible.

"Anything that worketh hurt, inconvenience or damage to another or his property may constitute a nuisance." Burdett v. Swenson, 17 Texas, 502. And in Gainesville H. & W. Ry. Co. v. Hall, 78 Texas, 174, and in other cases that might be cited, it is held that a nuisance may be created by smoke, noises, noxious vapors and other physical disturbances of the enjoyment of property. And if we could concede that the railway company had the lawful right to use the property in

question, which is not the case, in its private business for the purpose of conducting its yards, it could not be justified in doing so in a manner that would constitute a nuisance which would affect the plaintiff's property, or his beneficial enjoyment of the same, although in such use the appellant exercised ordinary care, and was free from negligence.

In Burdett v. Swenson, supra, it is said: "And by sequence it follows that if one does any overt act, in itself lawful, which being done in that place necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent upon him to find some other place to do the act, where it will be less offensive."

The fact that the business is a lawful one, and is properly and carefully conducted, is no defense where it occasions a nuisance; and especially is this the case where a different locality could have been selected, which if done, no injury would have resulted. Daniels v. Fort Worth & R. G. Ry. Co., 6 Texas Ct. Rep., 791; Missouri K. & T. Ry. Co. v. Calkins, 3 Texas Law Journal, 684, 9 Texas Ct. Rep., 791; Gainesville H. & W. Ry. Co. v. Hall, 78 Texas, 174; Ducktown Sulphur Co. v. Bomar, 60 S. W. Rep., 594; Baltimore & P. Ry. Co. v. Fifth Baptist Church, 108 U. S., 318; Laflin & R. Powder Co. v. Tearney, 7 Law. Rep. Ann., 263; Bohan v. Port Jervis Gas L. Co., 9 Law. Rep. Ann., 711; Susquehana Fertilizer Co. v. Malone, 9 Law. Rep. Ann., 737; Frost v. Berkley Phosph. Co., 26 Law. Rep. Ann., 697; 21 Am. and Eng. Ency. of Law, 2 ed., 688, 691-693; 74 Pa., 220; 2 Wood on Nuisances, secs. 759-762; Louisville Ry Co. v. Jacobs, 61 Law. Rep. Ann., 190; Louisville Ry. Co. v. Foster, 50 Law. Rep. Ann., 814.

There are facts in the record which indicate that the yards of the railway company could have been located at places other than the residence portion of the city of Greenville. Although they had the right to locate their yards at the place selected, it does not follow that by so doing they could create a nuisance and be absolved from the injurious effects that might result therefrom to the adjacent property owners and inhabitants. This was practically the view of the court in the recent case of Missouri K. & T. Ry. Co. v. Calkins, 3 Texas Law Journal, 684, 9 Texas Ct. Rep., 791; in which, as before stated, a writ of error was refused.

The observation just made concerning the use, and the liability of the appellant therefor, is applicable to the last item of damages asserted by the plaintiff, that is, the item of $500 that arose from the personal inconvenience and annoyance caused to the plaintiff and his family by reason of the noises, vibrations, noxious vapors, gases, smoke, cinders, dust, etc., that continually envelop the plaintiff's premises. In addition to the depreciation in value of the property occasioned by the conduct of appellant, in the case of Daniel v. Fort Worth & R. G. Ry. Co., 96 Texas, 327, the Supreme Court holds that the damages that result to the owner by reason of the noise, smoke, dust, etc., that arose from the nuisance are recoverable.

There are some assignments of error which complain of the charge of the court and the refusal to give certain charges, and of the admission of certain evidence, which we overrule. The charge when considered as a whole we think properly presented the issues that arose in the case.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

### OPINION ON MOTION FOR REHEARING.

#### Delivered June 22, 1904.

FISHER, CHIEF JUSTICE.—The appellant on page 23 of its motion for rehearing states that the following part of the opinion of the court was incorrect: "The plaintiff's title is connected with a partition deed between Mrs. Wright, the surviving widow of M. H. Wright, and the heirs at law of M. H. Wright, dated the 11th day of June, 1884." The error consists in giving the year 1884 instead of 1894; and to this extent the opinion will be corrected.

Also on the same page of the motion occurs this statement: "That the court erred in so much of the opinion in stating that 'there is no complaint made that the court refused any charge requested by the appellant upon this subject.'" The motion then refers to the fact that the eighth assignment of error submitted a proposition covering the subject mentioned in the opinion of the court. What we intended to say was that the charge of the court was correct as far as it went upon this subject, and that if not as full as the appellant desired, an additional instruction should have been requested. We were aware of the fact, at the time we used this language, that the appellant had requested the instruction set out under its eighth assignment of error, but we did not intend to hold that that instruction properly covered the matter omitted by the charge of the court, or that it was proper that such requested instruction should have been given. The opinion of the court disposes of the eighth assignment of error, and, in effect, holds that there was no error in refusing to give the charge requested .

The appellant also on the same page, and page 24 of its motion for rehearing, complains of the following portion of the opinion of the court: "The appellant contends that its right of way opposite the plaintiff's lots extends further north than twenty-five feet from the center of the original track located by the East Line & Red River Railroad Company."

The motion then proceeds with this statement: "The court seems to think that appellant bases its right to the strip of land north of the 25-foot limit by reason of the deed from M. H. Wright, dated January 30, 1880, conveying the original right of way. This is an error. It makes no claim to said strip of land by reason of that deed, but does claim it by reason of the deed dated December 20, 1901, from N. E.

Wright, the widow of M. H. Wright, to whom the strip of land had been conveyed prior to that by the other heirs of M. H. Wright. The court evidently overlooked this deed. Appellant in its brief called attention to it in the brief at the bottom of page 63. Appellant makes no contention whatever that the deed of January 18, 1880, covers any land north of the 25-foot limit."

As we understand the record, we are of the opinion that the appellant, in addition to the right asserted under the deed of December 20, 1901, also claimed the strip in controversy by virtue of the deed executed by Wright January 30, 1880, to the East Line & Red River Railroad Company, which right the appellant subsequently acquired. We did not discuss the deed of date December 20, 1901, because under no view of the evidence could it have been considered in determining the extent of the boundaries of appellee's land, as determined by the deeds under which he holds, and which were executed by the Wrights long prior to the time that the appellant acquired its additional deed in 1901. The original deed under which the appellee deraigns title, of date June 11, 1884, describes the land claimed by appellee as follows: "Beginning at the west boundary line of the original survey 260 1-5 varas south of the center of Washington Street; thence east 359 varas; thence south 363 1-10 varas; thence 150 varas to the west side of Texas Street; thence south 178 varas to the railroad right of way; thence with said right of way 509 varas to the beginning."

This deed by its terms calls for the railroad right of way, as one of the lines of the survey. The only deed then in existence that determined the location of the right of way was the deed that had been previously executed by the Wrights of date January 30, 1880, which fixed the right of way at twenty-five feet on each side of the located line of road. The deed under which the appellee holds, of course, would extend to where the line of the right of way was found to exist, which we determine to be twenty-five feet on each side from the center of the located track. If the land was conveyed to the vendors of the appellee by the deed above mentioned, then it is clear that the subsequent deed executed by Mrs. Wright to the appellant in 1901, conveying the same land, if such is its effect, could not be considered in determining or in any manner controlling or limiting the extent of the boundaries of the appellee's land acquired by the deeds under which he holds, which were executed many years prior to the time that Mrs. Wright attempted to convey the land in 1901 to the appellant.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused October 20, 1904.