**BURROWS et ux. v. TEXAS & N. O. R. CO. et al.**

**No. 2252.**

Court of Civil Appeals of Texas. Beaumont.
Dec. 8, 1932.

Rehearing Denied Dec. 14, 1932.

Adams & McAlister, of Nacogdoches, for appellants.

Arterbury & Coolidge, of Houston, for appellee.

O'QUINN, J.

Appellants, Charlie Burrows and his wife, brought this suit against the Texas & New Orleans Railroad Company and Nacogdoches county, jointly, and alleged that said railroad and county were operating a stock pen and dipping vat near their home in the city of Nacogdoches; that said stock pen and dipping vat were constructed together and were being operated conjunctively. They alleged that said stock pen and dipping vat constituted a nuisance, and prayed for an injunction against both defendants restraining them from operating same, and in the alternative, in the event the injunction was refused, for damages against said defendants, jointly and severally, for the depreciation in value of their property occasioned by the maintenance and operation of said nuisance. The facts which made said stock pen and dipping vat a nuisance and the result of their operation were fully pleaded.

The defendant railroad answered by general demurrer, general denial, admitted the erection of the stock pen and that in its operation the matters resulting therefrom alleged by appellant would arise, but denied that such things would be of such proportions as alleged by appellants. It further specially answered as to certain defensive matters which it is not necessary to set out, and denied that appellants were entitled to any judgment.

The defendant Nacogdoches county answered by general demurrer, and adopted the answer of the railroad company, and prayed that plaintiffs take nothing by their suit.

The case was tried to the court with the aid of a jury, but at the close of the evidence, the court announced that there was no fact issue relative to the application for an injunction to be submitted to the jury, and rendered judgment against appellants and in favor of appellees on said issue, and in all things denied the injunction. Whereupon the defendant Nacogdoches county again urged its general demurrer to that portion of appellants' petition wherein it was sought to recover damages against said defendant, and the court sustained the general demurrer and dismissed appellants' suit as against said defendant. Thereupon, the defendant Texas & New Orleans Railroad Company moved the court to instruct a verdict in its favor on the question of damages, which the court granted and instructed the jury to return a verdict against the appellants and in favor of the railroad company, which verdict was so returned and judgment accordingly entered. From all of said judgments appellants have appealed.

The judgment in full is as follows:

"Be it remembered, that upon the 24th day of September, A. D. 1931, came on to be heard the above styled and numbered cause, when appeared the plaintiffs in person and the defendant, Texas & New Orleans Railroad Company by its attorneys, and the County of Nacogdoches by its attorneys, and all parties announced ready for trial.

"Whereupon the defendant, the County of Nacogdoches, presented and urged to the Court its general demurrer and its special exceptions, and after hearing same the Court decided to overrule said general demurrer and special exceptions for the time being, and to take same along with the case. Whereupon a jury was duly impaneled and sworn, consisting of E. L. McIlwain, and eleven others, and after the pleadings were read to the jury, the cause proceeded to trial. At the conclusion of the evidence, on the 25th day of September, A. D. 1931, the Court, after considering the pleadings, evidence and argument of counsel, was of the opinion that in reference to plaintiffs' application and petition for injunction, the law and facts were with the defendants, and that there was no issue

of fact in reference to said application for injunction to be submitted to the jury.

"It is, therefore, ordered, adjudged and decreed by the Court that the prayer of the plaintiffs, Charlie Burrows and wife, Mrs. Charlie Burrows, for an injunction against the Texas & New Orleans Railroad Company, and the County of Nacogdoches, be and the same is hereby in all things denied, to which action of the Court the plaintiffs in open court excepted and gave notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas at Beaumont, Texas.

"Whereupon the County of Nacogdoches again urged its general demurrer and special exceptions to that part of the plaintiffs' petition wherein they sought to recover damages against the County of Nacogdoches, the Court having considered said general demurrer and special exceptions in reference to plaintiffs' claim for damages against the County of Nacogdoches, is of the opinion that the law and facts are with the defendant, the County of Nacogdoches. It is, therefore, ordered, adjudged and decreed by the Court that the general demurrer and special exceptions be and are hereby sustained, and the cause is dismissed; that the County of Nacogdoches recover of and from the plaintiffs, Chas. Burrows and Mrs. Chas. Burrows, all its costs in this behalf expended, and for which it may have its execution; to which action of the Court in sustaining and not overruling, the plaintiffs, then and there, in open court excepted and gave notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas at Beaumont, Texas. Whereupon the defendant, Texas & New Orleans Railroad Company, moved the Court to instruct a verdict in favor of the defendant, Texas & New Orleans Railroad Company, against plaintiffs' claim for damages against said defendant, and the Court having considered said motion, pleadings and evidence and argument of counsel, submitted to the jury the following charge:

" 'Gentlemen of the Jury: You are instructed to return a verdict against the plaintiffs and in favor of the defendant, Texas & New Orleans Railroad Company.'

"And said charge having been submitted to the jury, the jury returned into open court its verdict as follows:

" 'We, the jury, in accordance with the instructions of the Court, return a verdict in favor of the defendant, Texas & New Orleans Railroad Company, and against the plaintiffs in this case.

" '[Signed] E. L. McIlwain, Foreman.'

"And the court having received said verdict in open court on the 25th day of September, A. D. 1931, and having considered same, is of the opinion that in accordance with said

verdict judgment should be entered against the plaintiffs and in favor of the defendant, Texas & New Orleans Railroad Company.

"It is, therefore, ordered, adjudged and decreed by the Court that the plaintiff, Charlie Burrows, and wife, Mrs. Charlie Burrows, take nothing by their suit against the Texas & New Orleans Railroad Company, and that the Texas & New Orleans Railroad Company go hence without day and recover of and from the plaintiffs all its costs in this behalf expended, for which let execution issue. To which action of the Court in rendering judgment for the County of Nacogdoches and the defendant, Texas & New Orleans Railroad Company, the plaintiffs then and there in open court excepted to the action of the Court and give notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas at Beaumont, Texas, and plaintiffs are allowed 90 days in which to prepare, present, have approved and filed statement of facts and bill of exceptions, and appeal bond is fixed at $500.00."

The judgment will have to be reversed for several reasons.

As grounds for the relief asked, appellants, among other things, alleged that said stock pen and dipping vat were located in a residential portion of the city of Nacogdoches and within 425 feet of their home; that the maintaining and operating of said stock pen and dipping vat would create and be a nuisance for, in that:

"(a) That the maintaining and holding open to the public the stock pen and dipping vat in connection therewith and the keeping of the above named animals in and around said pen before and after dipping will create and make divers and sundry obnoxious and offensive odors that will be emitted therefrom and be carried into the residence of the plaintiffs, rendering the same unfit for occupancy, in that the odors will arise from the pen, loading racks and dipping vat, leaving the plaintiffs' home surrounded by the unpleasant and unbearable effects of such obnoxious and offensive odors.

"(b) That said stock pen and dipping vat will create and bring in and around plaintiffs' house flies, gnats and other insects, as well as stray dogs, rats and other rodents that communicate disease, which will gather round the stock, filth and rubbish that will accumulate around said stock pen and dipping vat, and will in turn come into and around the plaintiffs' home and carry such filth and disease into plaintiffs' premises, thereby creating a constant fear in the minds of plaintiffs for their health and safety, and bringing about a condition that will be distressing, in which the plaintiffs will have to live, if the same be permitted to be maintained and operated as is now contemplated, and will tend to deteriorate the health of plaintiffs on ac-

count of said worry of having said pen and dipping vat located as they are, and making plaintiffs more susceptible to disease and lessening their powers of resistance.

"(c) That by reason of the maintaining and operating of said stock pen and dipping vat, flies, gnats and other insects will gather in and around said stock pen and dipping vat and will be brought into said stock pen and around said stock pen and territory by the herding of said animals in and around said stock pen and dipping vat, and said insects, gnats, flies, will be thrown in and around plaintiffs' premises and will there communicate to plaintiffs' or liable to communicate communicable and contagious diseases, in that they will deposit dangerous germs and untold filth in and around premises of plaintiffs' which will continually harass, annoy and keep in constant fear the plaintiffs, as well as injure the health and happiness of said occupants, in that there will be ever present flies, gnats and other insects and unpleasant odors in and around plaintiffs' home and that will be a constant annoyance and will be present at all times and will be such a nuisance as to threaten the plaintiffs with disease of body and mind.

"(d) That if said stock pen and dipping vat be maintained and operated, same will gradually fill up with droppings from stock and thereby create and make obnoxious odors that will permeate the plaintiffs' premises and will cause fumes and smells at all times about the premises, and will be a constant and ever maintained nuisance that will work harm and injury to the plaintiffs in the enjoyment of their home.

"(e) That if said stock pen and dipping vat are allowed to be maintained and operated, it will place the plaintiffs' property and premises subject to be run over, trampled and torn up by stock so herded in and around said stock pen and dipping vat, in that if same be maintained and operated, there is no way to reach the stock pen unless all animals be driven down Church Street, and along and by plaintiffs' premises, and plaintiffs' premises and inhabitants thereof will be subjected to the viciousness of all animals that are to be shipped and that there will be a constant fear, dread and uneasiness on the part of the plaintiffs, in that there will be likely to be a break of said animals that are being driven to stock pen and especially will it make present a dangerous condition to the young children in and around plaintiffs' premises, and will be a constant source of fear to plaintiffs whenever they have visitors that the children and others as well as plaintiffs will receive serious injuries from wild and mad beasts in being driven to stock pen and dipping vat, in that said animals will be driven from their habitats and in attempting to return will run over and trample and injure plaintiffs' premises.

"(f) That in the maintaining and operating of said stock pen and dipping vat there will be those noises incident to driving, penning and dipping animals, and as plaintiffs' premises are situated, being in 425 feet of said stock pen, and dipping vat, will molest and disturb plaintiffs in their use and occupancy of their home, in that said stock will be dipped and loaded at all times of the day and night and will be a constant and continual noise of hollering and driving of said cattle into dipping vat and loading on to cars, and will destroy the peace and quietude of plaintiffs' premises, in that in the dipping and loading stock it is necessary to holler and create various and sundry noises in order to push the said stock along, and that the noises as will be incident to said dipping and loading will be of such a nature as to make plaintiffs' home undesirable and unfit for residential purposes, in that there will at all times be noises, odors and filth present from said stock pen and dipping vat.

"(g) That if said stock pen and dipping vat are maintained and operated, there will be constantly penned and held in said stock pen and dipping vat, animals at all times, and as is customary in all animals when taken from their accustomed range, there will be neighing, bellowing, bleating and squealing from the animals therein confined, which will be a constant reminder of the troubled condition of the dumb brute taken from its natural habitat, and will cause persons of ordinary temperament to be constantly alarmed, in that they will be confronted with the noises as aforesaid, and will create in persons, such as the plaintiffs are, a state of mind as to cause grief and pain and will cause great mental anguish and anxiety, which will work harm to the health of their families, and the peace and quietude of plaintiffs' premises will be impaired.

"(h) That if said stock pen and dipping vat are operated and maintained, they will be sprayed and charged with high disinfectants which will cause fumes and odors to arise therefrom and enter plaintiffs' premises and make the same uninhabitable and unbearable on account of said odors."

They further allege that they had selected their location for a permanent home; had expended $4,500 in erecting their residence, had beautified their grounds by planting and cultivating shrubs and flowers, and that if appellees were permitted to operate said stock pen and dipping vat it would result in the practical destruction of their property for residence purposes; that same would deteriorate in value $3,500; and that unless their prayer for injunction was granted they would suffer irreparable loss.

 Upon full and proper allegations that the stock pen and dipping vat, where located, and the manner of their operation, and the matters and things resulting therefrom, constituted a nuisance, and evidence tending to support said allegations, the court refused to submit the issue to the jury and determined the question himself. The stock pen and dipping vat, being permitted by law, were not a nuisance per se. Whether they were a nuisance in fact was a question of fact to be determined by the evidence, and there being proper and sufficient allegations of such facts as would make them a nuisance, and the evidence strongly tending to support such allegations, it was a question for the jury, and the court erred in taking the issue as to the facts from the jury and determining it himself. The jury must find the facts, and the court apply the law to the facts found by the jury as to the existence of a nuisance. 46 C. J. p. 812, § 469; 21 A. & E. Ency. Law (2d Ed.) 691; 20 R. C. L. p. 484, § 97; Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237; City of Fort Worth v. Crawford, 74 Tex. 404, 12 S. W. 52, 15 Am. St. Rep. 840; Brewster v. City of Forney (Tex. Com. App.) 223 S. W. 175; Rainey v. Red River, T. & S. R. Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580.

Appellants, in addition to their prayer for injunction, in the alternative, ask for damages. At the time the suit was instituted the erection of the stock pen by defendant railroad had been completed, but the construction of the dipping vat by the county was unfinished, hence the form and allegations of appellants; but at the time of the instant trial, both stock pen and dipping vat were completed and in operation, and much testimony was offered as to the effects of their operation along the lines of appellants' allegations of nuisance, for injunction, and damages resulting to their property. Certainly the question of damages was one of fact to be found by the jury, and if the jury found in favor of appellants on the issue of facts constituting a nuisance, then they would be entitled to recover damages, and the court's instruction to the jury to return a verdict against appellants on said issue was error.

 We gain from the record and briefs of the parties that the court sustained the contention of defendant Nacogdoches county that appellants could not maintain their suit against it because they had not presented their claim for damages to the commissioners' court and same had been denied before filing their suit to enforce same. We think this was error. It is our opinion that appellants' claim for damages growing out of an alleged nuisance created and maintained by the court is not such claim as must be presented to the commissioners' court before suit can be maintained therefor. To successfully maintain their suit, appellants must show the stock pen and dipping vat, where located, as operated and the results flowing from same, constituted a nuisance. Undoubtedly appel-

1094

lants did not have to present their application to the commissioners' court for an injunction to restrain the defendant from operating, either alone or in conjunction with another, a nuisance to the detriment of its citizens or any of them. The claim for damages was but incidental to the existence of the nuisance, and so not such claim as the Legislature had in mind when it enacted article 1573, R. C. S. Montague County v. White (Tex. Civ. App.) 241 S. W. 740. See, also, Pierce v. Gibson County, 107 Tenn. 224, 64 S. W. 33, 36, 55 L. R. A. 477, 89 Am. St. Rep. 946.

 From the record, it may be that the court concluded that appellants were not entitled to relief because the stock pen and dipping vat, if under all the facts, constituted a nuisance, being authorized by law, were not subject to abatement and did not subject the ones operating same to damages, being what is called a legalized nuisance. If the court so concluded, it was error. While the law permits and requires railroads to erect and maintain stock pens, still the right to select the site of same is not an arbitrary one. The law gives to railroad companies the right to arbitrarily select its right of way as it may deem "most advantageous" to its interest (article 6318, R. S.), but such is not the case as to the location of its machine shops, stock pens, and the like. Rainey v. Red River, T. & S. R. Co., 99 Tex. 276, 283, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580. In reference to stock pens there is no express provision as in the case of right of way that they may make the selection for such purposes of "the most advantageous" location. Then before it can be held that the Legislature intended to legalize a nuisance, it must appear that the statute either pointed out the place where the objectionable structure or works were to be built and operated, or left to the corporation or person operating same the power to make arbitrary the selection. In relation to the location of stock pens the law authorizing them does neither. What is said applies equally to the location and operation of dipping vats by the county. It cannot be said that the Legislature, by authorizing the construction and operation of stock pens and dipping vats, intended that they could be arbitrarily located in residential portions of a city. When a nuisance actually exists, it is not excused by the fact that it arises from a business which is of itself lawful, or that it is necessary to the operation of the business. 46 C. J. p. 658, § 23; 21 A. & E. Ency. Law (2d Ed.) 689; Rainey v. Red River, T. & S. R. Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Am. St. Rep. 580; Gulf, C. & S. F. R. Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 1001, 52 L. R. A. 293, 86 Am. St. Rep. 835; Missouri, K. & T. R. Co.

of Texas v. Anderson, 36 Tex. Civ. App. 121, 81 S. W. 781; Cohen & Co. v. Rittimann (Tex. Civ. App.) 139 S. W. 59. See, also, 21 A. & E. Ency. Law (2d Ed.) 736, 737.

 Appellee Texas & New Orleans Railroad Company insists that the judgment should be affirmed because appellants did not show how much of the alleged damages, if any, to their property was caused by the act of the railroad, and how much was caused by appellee Nacogdoches county—in other words, it is contended that appellants should by their pleadings and proof segregate the damages by showing that caused by each of the defendants. We do not believe this contention sound. The acts complained against defendants constituted a tort, and if such, then defendants were joint tort-feasors, and would be jointly and severally liable for such damage as was occasioned by their acts. The dipping vat built by the county was in the stock pen of the railroad, and it was used for the purpose of preparing stock for shipment in the cars and over the line of defendant Texas & New Orleans Railroad Company, and the stock pen and dipping vat were conjunctively used and this with the knowledge and consent of both defendants. This constituted them joint tort-feasors if the stock pen and dipping vat, under all the facts, constituted a nuisance. All parties who co-operate to create and maintain a nuisance are jointly liable in damages. 46 C. J. p. 749, § 347; Comminge & Geisler v. Stevenson, 76 Tex. 642, 13 S. W. 556; Houston & T. C. Railroad Co. v. Lackey, 12 Tex. Civ. App. 229, 33 S. W. 768; Denison & P. S. Railway Co. v. O'Maley (Tex. Civ. App.) 45 S. W. 227.

The judgment is reversed, and the cause remanded.