## S. D. RAINEY v. RED RIVER, TEXAS & SOUTHERN RAILWAY COMPANY, ET AL.

### No. 1375. Decided November 9, 1905.

**1.—Railway—Nuisance—Yards and Shops—Right of Selection.**

Though a railway company has the absolute right to select the location deemed most advantageous for its right of way, subject to the obligation to make compensation for damages (Rev. Stats., art. 4424), the right of selection of the site of its yards, coal bins, round houses, machine shops, etc., is not an arbitrary one (Rev. Stats., art. 4445). To be given the effect of legalizing a nuisance the statute must either point out the place where the structures or works are to be built, or leave to the corporation the power to arbitrarily make the selection. (Pp. 281–283.)

**2.—Same—Injunction.**

In the establishment and maintainance of its yards, round houses, etc., a railway company, like a corporation pursuing a private business, may be enjoined from maintaining a nuisance to the property of neighboring proprietors, though guilty of no negligence in construction or operation. (Pp. 284, 285.)

**3.—Same.**

The right to compensation for injury to private property by the construction and operation of railroad yards, shops, etc., is absolute; but such necessary structures and operations can not be enjoined as a nuisance where the company can show a reasonable necessity for their location at the particular point, or that no other eligible place can be found where a similar injury would not be inflicted upon another person or if the injury be small and capable of adequate compensation in money. (P. 285.)

**4.—Nuisance—Injunction.**

Upon the finding of facts establishing that the construction and operation of railway yards, etc., constituted a nuisance damaging the residence property of a neighboring proprietor, though the petition sought injunction only, and not damages, it was error to refuse to enter judgment for plaintiff and to dismiss his case. (Pp. 281–285.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

Rainey sued the defendant companies for injunction against a nuisance. The facts were found in his favor, but the trial court refused an injunction. The judgment was affirmed on plaintiff's appeal, and he thereupon obtained writ of error from the Supreme Court.

*Ross & McLean,* for plaintiffs in error.—The court having charged the jury that if they found and believed from the evidence that the defendants were maintaining and operating a switchyard and roundhouse, and were watering, coaling and firing their engines at their watering tank and coal bins within the territory described in plaintiff's petition, and the operation and maintenance of said switchyard and roundhouse and such watering, coaling and operating their engines, caused loud noises to be made and created smoke, dust and cinders, and that if they further believed from the evidence that this caused hurt, inconvenience or damage to plaintiff's property—that is, if they believed that by the reason thereof plaintiff's property is rendered less valuable for the purposes for which it was adapted and used, and materially interfered with the comfortable enjoyment thereof by the plaintiff and his family, and they further believed that such damage and inconvenience is such as is not suffered by the community at large—then it will be their duty to return a verdict for the plaintiff; and the jury having found and returned a verdict for the plaintiff in the case, thereby establishing that the acts of defendants complained of constituted a nuisance, such acts should be enjoined. Baltimore & Potomac R. R. Co. v. Fifth Baptist Church, 108 U. S., 317; Pennsylvania R. R. Co. v. Angel, 41 N. J. Eq., 316; 56 Am. Rep., 1; Louisville & N. Terminal Co. v. Jacobs, 72 S. W., 954; Beseman v. Pennsylvania R. R. Co., 13 Atl. Rep., 167; Cogswell v. New York, N. H. & H. R. R. Co., 103 N. Y., 10; Booth v. Rome, Watertown & O. T. R. R., 140 N. Y., 267; Campbell v. Seaman, 63 N. Y., 568; Parker v. Winnipiseogee L. C. & W. Co., 2 Black, 551; Morton v. Mayor of New York, 140 N. Y., 207; Chicago G. W. Ry. Co. v. First M. E. Church, 102 Fed. Rep., 85; Gainesville, H. & W. Ry. Co. v. Hall, 78 Texas, 174; State of Texas v. Goodnight, 70 Texas, 686.; Taylor v. Dunn, 80 Texas, 667; Pierce on Railroads, 268, 270.

*C. H. Yoakum, West, Chapman & West* and *Theodore Mack,* for defendants in error.—There was no error with respect to the matter assigned, because the issue of permanent nuisance was not passed upon by the jury. Uline v. New York Cent. Ry., 101 N. Y., 98.

The action of the court in refusing to grant the motion for the decree amounted in law to the granting of a motion for a new trial; hence there is no final judgment to be appealed from.

The court did not err in refusing to perpetually enjoin the appellees in this case, as prayed for in the motion of the appellant, because the rule in equity is that where the public benefit arising from the maintenance of an alleged nuisance greatly outweighs the private and individual inconvenience resulting therefrom, and the damages sustained

by private persons can be measured and recovered in an action at law, that equity will not interfere by injunction. Daniels v. Keokuk Water Works, 61 Iowa, 549.

The court did not err in refusing plaintiff the relief prayed for, because it appears from the facts of the case that the plaintiff then had pending an action for damages against the defendants, involving the identical nuisance which was made the subject of the bill for injunction. The plaintiff having an adequate remedy at law, was not entitled to relief in equity.

Courts of equity will only enjoin large and extensive works upon clear proof that such works are nuisances, and that a court of law can not afford adequate redress.

The issue of permanent nuisance not having been passed upon by the jury, the law will not proceed upon the assumption that the nuisance or illegal conduct will proceed forever; consequently, there was no error in the court in refusing to perpetually enjoin the defendants. Uline v. New York Cent. Ry., 101 N. Y.; 98; Bispham on Equity, page 492; Webber v. Gage, 39 N. H., 186.

Jurisdiction in equity is applied only where the right is clearly established—where no adequate compensation can be made in damages; the case must be one of strong and imperious necessity; the right must have been previously established by law, and where the complainant has slept upon his rights, the remedy by injunction will not be granted. Osborne v. Missouri Pac. Ry., 147 U. S., 248; Kansas & A. V. Ry. v. Payne, 49 Fed. Rep., 114; Stetson v. Chicago & E. Ry., 75 Ill., 74; Bassett v. Salisbury Mfg. Co., 47 N. H., 437; Erie Ry. v. Delaware, L. & W. Ry., 21 N. J. Eq., 291.

A court of equity will always consider injuries to the public in granting an injunction, as well as injury to the complainant in refusing it; and in a case where it is shown that the work is operated in a lawful and skillful manner and free from negligence, the public interest outweighs those of the private citizen who may seek redress in an action at law for damages. Clifton Iron Co. v. Dye, 87 Ala., 468; 6 Sou. Rep., 192; Daniels v. Keokuk Water Co., 61 Iowa, 549; 16 N. W., 705; Burwell v. Vance Co., Com., 93 N. C., 73; 53 Am. Rep., 454; Goodall v. Crofton, 33 Ohio St., 271; 31 Am. Rep., 535; 2d Elliott on Rys., p. 904; Gilbert v. Showerman, 23 Mich., 448; Bernard v. Sherley, 135 Ind., 558; Robb v. Carnegie, 145 Pa. St., 324; 14 L. R. A., 329; Atty. Gen. v. Perkins, 2 Dev. (Eq.), 38; Atty. Gen. v. Lea's Heirs, 3 Ired. (Eq.), 302; Wilder v. Strickland, 2 Jones (Eq.), 386.

A railroad company will not be enjoined in the use of its track in making up its outgoing trains and in unmaking its incoming trains, in doing which loud noises are made by means of cars, engines and men, and smoke, cinders and steam cast off thereby, causing inconvenience, etc., etc., to the residents on abutting property, unless it be shown that there is some abuse or negligent use of its franchise. Beideman v. Atlantic City Ry. Co., 19 Atlantic Rep., 731, cited in note of 9th L. R. A., 713.

Since equity follows the law, a court of equity will not lend its aid to one whose action at law has been lost by limitation, or to one who

lost his right through laches; equity gives only indemnity and nothing more, and does not give the complainant a better right than he lost. Finks v. Mahaffy, 8 Watts (Pa.), 384; Bank of Pennsylvania v. Potius, 10 Watts (Pa.), 148; Guckenheimer v. Angevine, 81 N. Y., 394; Bassett v. Salisbury Mfg. Co., 4 N. H., 426; Batsell v. Richards, 80 Texas, 507; 24 Am. & Eng. Encyc. of Law (1st ed.), 192; 2d Wood on Nuisances (3d ed.), 1130, also sec. 791; Bispham on Equity, p. 56.

When an injunction is sought against a quasi work or enterprise, rather than against a willful encroachment on rights, it should clearly appear that the act or conduct sought to be prohibited is a nuisance, and that a court of law can not afford adequate redress. Even though one can not justify the commission of a nuisance through legislative enactment or municipal grant, still, where it is shown that the acts are not in excess of the powers granted, and are not recklessly and carelessly done, an injunction will not lie. 2d Wood on Nuisances (3d ed.), secs. 760, 820, 821, and cases cited.

Even though an act be a nuisance, still, if there be a complete remedy at law, injunction will not be granted, since relief by injunction is not a matter of right, but one resting in a measure in the sound discretion of the chancellor. Richards App., 57 Pa. St., 105; 98 Am. Dec., 202; Randle v. Pacific Ry., 65 Mo., 325; 2d Wood on Nuisances (3d ed.), 131.

Steam railways can not be operated without fuel, and proper structures for supplying engines therewith are necessary to be maintained at convenient points for that purpose. They are necessarily incident to the operation of the road. The owners of property in the vicinity of a railway necessarily suffer inconvenience, such as the detention of trains upon the streets and tracks, noise of passing trains, smoke emitted from the engines, etc. For this inconvenience no damages are recoverable; hence a nuisance of the character indicated, caused to one residing on property within several hundred feet from the right of way of a railway company, but not abutting thereon, is not the subject of damages where the road is properly constructed and operated in the usual and customary manner, and the other necessary media incident to the operation of the road are so handled. Since no damages are recoverable for such inconvenience, an injunction will not lie. Dunsmore v. Central Iowa Ry., 72 Iowa, 182; 32 N. W., 456; Parrott v. Cincinnati, H. & D. Ry., 1 O. St., 624; Presbrey, v. Old Colony & N. Ry., 103 Mass., 1; Walker v. Old Colony & N. Ry., 103 Mass., 10; Struthers v. Dunkirk, W. & P. Ry., 87 Pa. St., 282; Hatch v. Vermont Cent. Ry., 28 Vt., 149; Osborne v. Missouri Pac. Ry., 147 U. S., 248; 21 Am. & Eng. Encyc. of Law (2d ed.), notes, pp. 737-8; 2 Elliott on Rys., 1037; 3 Elliott on Rys., p. 1650; 2 Beach on Injunction, secs. 1049, 1072.

GAINES, CHIEF JUSTICE.—In their opinion the Court of Civil Appeals have made a very full statement of this case, which we adopt and copy:

"Appellant instituted suit to enjoin and restrain the appellees, railway companies, from maintaining and operating their terminal and switch yards, roundhouse, engine house, machine shops, water tank and

coal bins, and from using their tracks for switching trains and cars, distributing cars, making up trains, coaling, watering and firing steam engines and locomotives, and from repairing and storing engines in said roundhouse and engine house, within certain defined territory in close proximity to his residence. He alleged that the lot upon which was situated his residence was highly and well improved, having thereon a commodious two-story dwelling house, a stable, shade trees, shrubbery, fruit trees, vines and flowers, with the appurtenances; and that in the said dwelling house with the appurtenances the said plaintiff and his family dwelt; that said lot and dwelling house, with the appurtenances, are now and have been for a long time, to wit, seventeen years, occupied and used by him and his family; that said lot and dwelling house, but for the grievances, wrongs and injuries complained of, were suitable for a home for himself and family, and would be of the reasonable value of not less than $15,000.00; and that prior to the grievances and acts of annoyance complained of, said lot and dwelling house, with the appurtenances, were comfortable and convenient as a residence and home for himself and family, and was by them used and enjoyed, unmolested and free from annoyances; that the defendants have built, constructed and placed, and are now maintaining and using continuously, a number of railroad tracks, to wit, more than five in number, north, northeast and northwest of and near the said lot and dwelling house; that said railway tracks are placed within three hundred feet of said lot and dwelling house; that defendants have constructed and erected, and are now maintaining and using continuously, near and within three hundred feet of said lot and dwelling house, a large water tank for supplying water for their engines; that defendants have constructed and built, and are now maintaining and using continuously, near and within three hundred feet of said lot and dwelling house, large coal bins, together with derricks for supplying coal for their engines; that defendants have constructed and built and erected, and are now maintaining and using continuously, near and within three hundred feet of plaintiff's said lot and dwelling house, a large roundhouse and engine house for storing their engines; and that defendants have erected and built, and are now maintaining and using continuously, near and within three hundred feet of said lot and residence, large railroad machine and repair shops; that the said defendants have placed and used, and are now maintaining and using continuously, near and within three hundred feet of plaintiff's said lot and dwelling house, their terminal and switch yards; that the said railroad tracks, water tanks, coal bins, derricks, roundhouse, machine and repair shops and terminal and switch yards are upon and cover certain territory, the metes and bounds of which are fully set forth; that in maintaining and using the said machine and repair shops, the defendants continuously make loud and deafening noises, which interrupt and disturb plaintiff in the use and enjoyment of his said home; that in permitting cars laden with live stock to stand on said tracks stenches, noises, smoke, steam and dirt are caused, which annoy and injure plaintiff in the use and enjoyment of his said lot and residence; that a large number of locomotives and steam engines are habitually housed and their fires made in said en-

gine house, and are coaled, watered, repaired and otherwise used on said tracks and in said repair shops; that defendants and each of them in watering, coaling, firing, switching and operating and otherwise using the locomotives and steam engines, and distributing cars, making up trains, and steam engines, cause constantly and continuously loud and deafening noises by ringing the engine bells, blowing engine whistles, blowing off steam and propelling engines and cars; that said steam engines, locomotives and cars emit clouds of smoke, dust, cinders, sparks, noxious vapors and steam from the engines with great force and noise, jarring and shocking plaintiff's said dwelling house; that the sparks, cinders, soot, smoke and noxious vapors from said engines have been, and are still, continuously blown and thrown in and upon plaintiff's said premises, and against and into his said dwelling house and stable, on his furniture, furnishings and clothing; that the stenches, smoke, dirt, noise, jars and shocks, caused as aforesaid, are so great that plaintiff and his family are continuously incommoded, inconvenienced, annoyed and harassed in the possession, use, occupation and enjoyment of said dwelling house, with the appurtenances; that the noise, jars and shocks are such that a conversation can not be carried on in plaintiff's said premises; and that he and his family can not sleep at night without constantly and continuously being awakened, annoyed, harassed and shocked; that the disagreeable and offensive odors from cars laden with live stock, added to the smoke, noise cinders and sparks, render plaintiff's said property not only uncomfortable and disagreeable, but entirely undesirable as a home and residence; that on account of these things he has been forced to abandon a portion of his dwelling house, and that if defendants, or either of them, are permitted to continue the use of said tracks, grounds and yards in the manner shown, his property will have to be abandoned and will be lost; that the place described is in a densely populated part of the city of Fort Worth, and a great many citizens, to wit, more than fifty, are annoyed and inconvenienced in like manner as plaintiff. No judgment for damages was asked, but an injunction alone sought, as before shown.

"The defendants pleaded that they had legally acquired the ground upon which were situated their terminals in the city of Fort Worth; that they operated their roads with all modern appliances, with due regard to the accommodation and service of the general public, both as to freight and passenger traffic; that they owned in fee simple their right of way, sidings, switches, etc., and that their water tanks, roundhouses, etc., were all necessary in the maintenance and operation of said railroads, and in the transaction of their business along and over their line of road as constructed and maintained in the corporate limits in the city of Fort Worth; that they had fully complied with all the laws of the state and the ordinances of the city.

"A single issue was submitted to the jury in the following charge: 'If you find and believe from the evidence that the defendants are maintaining and operating a switch yard and roundhouse, and are watering, coaling and firing their engines at their watering tanks and coal bins within the territory described in plaintiff's petition, and that the operation and maintenance of said switch yard and roundhouse and such

watering, coaling and operating their engines causes loud noises to be made and creates smoke, dust and cinders; and you further believe from the evidence that this causes hurt, inconvenience or damage to plaintiff's property—that is, if you believe that by reason thereof plaintiff's property is rendered less valuable for the purposes for which it is adapted and used, and materially interferes with the comfortable enjoyment thereof by the plaintiff and his family; and you further believe that said damage and inconvenience is such as is not suffered by the community at large—then it will be your duty to return a verdict for the plaintiff.' The jury returned a general verdict in favor of the plaintiff, whereupon he moved the court in writing to enter judgment in his favor according to the prayer of his petition. This the court declined to do, or to enter any judgment whatever in his favor, but entered a decree dismissing the bill.

"Much evidence was introduced upon the trial going to support the verdict of the jury upon the issue submitted.

"It was agreed between the parties that appellees had acquired real estate occupied by them by condemnation or purchase; and further, that the railroad yards are constructed as they should be; that the switch yards are operated as they should be, and with as little noise as they can be, and that there is no way that these yards could be constructed at that place other than they are constructed, which would lessen the annoyance to anybody; and that appellees' road is kept in good repair; and that their engines and rolling stock are kept in good repair; and that they use the very best class of coal to be had. In short, it is undisputed that appellees were guilty of no negligence in the manner of maintaining and operating their various terminal facilities. But the sole complaint is, that being maintained as they are at this particular place, they constitute a nuisance as to appellant, which he is entitled to abate as such."

It is clear that if the acts charged against the defendant had been committed by an individual, or by a corporation in pursuit of a private business, they would have created a nuisance which was subject to be enjoined. But a railroad company is organized for the performance of duties to the public as well as for private emolument; and when such is the case, the legislature may legalize the nuisance; provided, always, the damages be fully compensated by the payment of money. The question then is, does our law give a railroad company the power to select arbitrarily the location of its machine and repair shops, and necessary structures of a like character, without reference to the damage to property in its vicinity, or to the discomfort of persons there residing?

Sec. 17 of art. 1 of our constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the state, such compensation shall be first made or secured by a deposit of money," etc.

Art. 4445 of the Revised Statutes also provides that: "If any railroad corporation shall at any time be unable to agree with the owner for the purchase of any real estate or the material thereon required for the purpose of its incorporation or the transaction of its business, for

its depots, station buildings, machine and repair shops, or for the right of way, or any lawful purpose connected with or necessary to the building, operating or running its road, such corporation may acquire such property in the manner provided in this chapter." The manner provided in the chapter is by condemnation.

That a railroad company should have the right to designate its right of way and to condemn property therefor, as well as to damage other property not taken, would seem almost a necessity. Art. 4424 of the Revised Statutes reads as follows: "Every railroad corporation shall have the right to cause such examination and survey for its proposed railway to be made as may be necessary to the selection of the most advantageous route, and for such purpose may enter upon the lands or waters of any person or corporation, but subject to responsibility for all damage that may be occasioned thereby." We think it a reasonable implication from this provision that it was contemplated that the company was empowered absolutely to select such right of way as it should deem "most advantageous" to its enterprise. We are of the opinion, however, that the case of machine and repair shops and the like stands upon a different footing. From the statute first quoted above, it is seen that they have the express power to condemn land for such structures, and of necessity they must make the selection of the location. But in our opinion, it does not follow that the legislature intended to empower them to act arbitrarily and without regard to any injury that might be inflicted upon others. In reference to "machine and repair shops," there is no express provision as in case of the right of way that they make the selection for such purposes of "the most advantageous" location. The proposition that, before it can be held that the legislature intended to legalize a nuisance, it must appear that the statute either pointed out the place at which the objectionable structures and works were to be built and operated, or left to the corporation the power to make arbitrarily the selection, is illustrated by two leading cases from the House of Lords, which are sharply in contrast upon the question. In the case of Metropolitan Asylum District Managers against Hill and others (6 App. Cas., 193), it appears that an act of parliament authorized the establishment of asylums for the care of sick and infirm and poor, and created corporations for the purpose, empowering them to purchase lands and erect buildings for carrying out the objects of the act; and that the Metropolitan Asylum District Managers, having been created a corporation under the act, purchased land and erected a hospital for small-pox and other infectious diseases which were found to be a nuisance to the complainants, who were property holders in the vicinity of the hospital so established. It was held that, although the act authorized the establishment of the hospital, it did not empower the corporation to create a nuisance to the detriment of neighboring proprietors.

The case of the London, Brighton & South Coast Railway Company against Truman and others (11 App. Cas., 45), was an action to enjoin the defendant railway company from maintaining a cattle dock and yard in connection with its business as a carrier of cattle. The corporation was created in 1837 by private act. In the section or sections of the act which defined the right of way, no mention was made of the use

of the land to be condemned or purchased for the purpose for cattle pens. But section 82 of the act contained this provision: "It shall be lawful for the said company, and they are hereby empowered to contract with any person or corporation (who shall be willing to sell the same) for the purchase of any lands, not exceeding, in the whole, fifty statute acres, in addition to the lands hereinbefore authorized to be taken, in such places as shall be deemed eligible, for the purpose of making and providing additional stations, yards, wharfs, waiting, loading and unloading places, warehouses, and other buildings and conveniences, for receiving, depositing, loading, or keeping any cattle or any goods, articles, matters, or things, conveyed or intended to be conveyed upon the said railway, or for making convenient roads or ways thereto, or for any other purposes whatsoever connected with the undertaking by this act authorized, which the said company shall judge requisite." The court held that the company by virtue of the act, had the right to establish its cattle depots at such places as it might select, provided they were carefully established and operated, and that persons damaged thereby must bear the loss. The words "in such places as might be deemed most eligible," clearly show that the company was given the absolute right of selection and therefore the right to create a nuisance, in so far as the cattle depots were a necessary nuisance, in such places as might be deemed most eligible. This, it seems to us, is the main feature which distinguishes the case from that of the Metropolitan Asylum District Managers v. Hill. In that case the corporations were given the right to establish hospitals, but were not given the absolute right to choose their location; in the case of Railway Company v. Truman, the company was expressly authorized to buy land for cattle depots and to make their own selection of the places at which they were to be established, without reference to the rights of neighboring proprietors.

The present case, in our opinion, falls within the rule followed in that of the Metropolitan Asylum District Managers v. Hill. In his opinion in the Truman case, Lord Blackburn says: "It is clear that the burden lies on those who seek to establish that the legislature intended to take away the private rights of individuals, to show that by express words, or by necessary implication, such an intention appears." Railroads can only be chartered in this state under the general laws. As we have seen, our statute gives them the power to acquire land for "machine and repair shops." It is necessarily implied that they may establish and operate such shops. Since in the nature of things, a general law for the incorporation of railroad companies could not point out the particular spots upon which the shops were to be located, it follows that they must have authority to choose the locations. But it does not follow that it was the intention of the legislature to empower them to make the selection arbitrarily; that is to say, without reference to the rights of persons who might own property in close proximity to such locations. Did the legislature intend to authorize a railroad running in the city of Austin, to establish and operate structures of the character in question, so near to the capitol as to render it unfit for the purposes for which it was constructed? The same question may be asked as to the courthouse of the county, the public school buildings and

churches of the city. We should be loath to answer this question in the affirmative. Yet if the statute empowers a railroad company to establish its shops in such proximity to a private dwelling, as to depreciate its value and to bring great discomfort upon the occupants, no sufficient reason suggests itself to our minds, why the same might not be done as to the capitol, the courthouse and other public structures. In the leading and often cited case of the Baltimore & Potomac Railway Company v. The Fifth Baptist Church (108 U. S., 317) a recovery of damages by the church against the railroad company was sustained for the maintenance of its shops in close proximity to the church, and the shops as operated were declared to be a nuisance. In course of the opinion it is said that it was subject to be enjoined, though the question of an injunction was not involved in the case. The court there conceded all the rights of the company growing out of statutory authority which can be claimed for the defendant company in the present case.

We are aware that there is a conflict of authority upon the question. Among the recent cases in support of our opinion may be cited Ridge v. Pennsylvania R. R. Company, 8 N. J. Eq., 176; Terminal Company v. Jacobs, 109 Tenn., 741; and Willis v. K. & I. Bridge Company, 104 Ky., 190. In Dolan v. Chicago, M. & St. P. Railway Company, 118 Wis., 336, and Austin v. Augusta Terminal Railway Company, 108 Ga., 686, the contrary doctrine is held—the latter by a divided court.

For the reasons given we are of opinion that the judgment ought to be reversed and the cause remanded.

Since the case is to go back for a new trial, we think it not improper to suggest that because a nuisance of the character of that in question is not legalized by the statute, it does not follow that it can in every case be enjoined. The constitution gives the injured party an absolute right to pecuniary compensation. Machine and repair shops are necessary to the operation of any extended line of railroad, and they can hardly be constructed and operated without creating a nuisance or becoming a nuisance in the course of subsequent events. So that in any case, when the company is enabled to show a reasonable necessity for the location at the particular point, or that no other eligible place can be found where a similar injury would not be inflicted upon another person, or persons, an injunction should be denied and the party remitted to his action for damages. So if the injury be small and capable of being estimated in money and a money payment is an adequate compensation, and the injunction would operate oppressively to the defendant, then it may be that it would be proper to refuse to enjoin. (See remarks of Lord Justice A. L. Smith in Shelfer v. Electric Light Company, 1895, 1 Chan., pp. 321-323.) However, we would not be understood as laying down any fixed rules upon this point but as merely throwing out some suggestions which may be useful in the final determination of the rights of the parties.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

## ON MOTION FOR REHEARING.

In this motion it is insisted on behalf of defendant in error, among other things, that we were in error in treating the case as involving the maintenance and operation of machine and repair shops. The criticism is probably just. While the petition does complain of the erection and operation of machine and repair shops, as well as a roundhouse, coal bins and water tank, it would seem from the charge of the court, that there was nothing to submit to the jury as to machine and repair shops. Such shops were probably not involved in the case. But in our opinion this can make no difference in the result of the case in this court. That the opinion was not confined to machine and repair shops is shown by the following extract: "We are of the opinion, however, that the case of machine and repair shops *and the like* stands upon a different footing." The charge of the court does submit the question of the operation of a switch yard and roundhouse, and of water tanks and coal bins— some of which at least fall within the category of "the like."

With this explanation, the motion for a rehearing is overruled.

*Filed February 20, 1906.*