STARK v. COE et ux.†

(Court of Civil Appeals of Texas.　Jan. 21, 1911.　Rehearing Denied Feb. 11, 1911.)

1. NUISANCE (§ 5*)—RIGHT TO MAINTAIN.

A railroad company subdividing and selling its lands, but reserving to itself the right to erect warehouses, depots, and other buildings on its right of way, and to lease the same to persons for the warehouses and for the purpose of shipping grain, does not thereby acquire a right to erect a corn-shelling plant on the right of way and operate it so as to create a nuisance, nor does the reservation give a lessee of a portion of the right of way a right to erect such plant and to operate the same so as to create a nuisance, damaging surrounding property, and jeopardizing the health of its occupants of homes adjoining the right of way.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 6; Dec. Dig. § 5.*]

2. NUISANCE (§ 33*)—ACTS CONSTITUTING— EVIDENCE—SUFFICIENCY.

In an action to abate a nuisance caused by the operation of a corn elevator and sheller, evidence *held* to justify a finding that the plant and its operation greatly affected the use, comfort, and enjoyment of adjoining property and the health of an occupant, authorizing its abatement.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 89; Dec. Dig. § 33.*]

3. NUISANCE (§ 23*) — PRIVATE NUISANCE— RIGHT OF PERSON AGGRIEVED.

Under Sayles' Ann. Civ. St. 1897, art. 2989, subd. 1, authorizing the court to restrain an act prejudicial to the applicant therefor, one aggrieved by a nuisance seriously affecting his health and life, and the comfortable enjoyment of his home, may sue in equity to abate the nuisance, though the person causing the nuisance is financially responsible for the damages incurred for the injury caused thereby one for which there is no adequate remedy at law.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 57; Dec. Dig. § 23.*]

4. TRIAL (§ 105*)—EVIDENCE—INSTRUCTIONS.

Where evidence is admitted without objection, it is not error to refuse a charge withdrawing the same from the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 260–266; Dec. Dig. § 105.*]

5. NUISANCE (§ 25*) — PRIVATE NUISANCE— PUBLIC CONVENIENCE OR INCONVENIENCE.

Neither the convenience or inconvenience of the public affects one's right to have a nuisance abated, for under Const. art. 1, § 17, one's property may not be destroyed for the convenience of the public, unless he is compensated therefor.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 25.*]

6. NUISANCE (§ 34*)—ABATEMENT—ACTIONS.

In an action to abate a nuisance created by the operation of a corn elevator and sheller, the court properly submitted to the jury the issue whether the plant could be so run as not to materially interfere with the enjoyment of plaintiff's home, for, if the plant might be so remedied that it could be operated without being a nuisance interfering with the use of the home of plaintiff or the health of the occupants thereof, it should not be abated.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 91; Dec. Dig. § 34.*]

7. NUISANCE (§ 34*)—ABATEMENT—EVIDENCE —INSTRUCTIONS.

Where, in an action to abate a nuisance created by the operation of a corn elevator and sheller, the evidence showed that the plant was of modern equipment, and could not be improved on, and that there was no way to prevent dust escaping and entering plaintiff's home to his injury, a charge requiring the jury, in order to abate the nuisance, to find that the plant was a nuisance, and that it could not in the future be so operated by any changes as to prevent the same becoming injurious to the home or health of plaintiff, was beneficial to defendant, and it could not complain thereof.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 34.*]

8. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION.

The charge of the court to determine its correctness must be considered as a whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 703; Dec. Dig. § 295.*]

9. TRIAL (§ 296*)—INSTRUCTIONS—BURDEN OF PROOF—CONSTRUCTION.

Where, in an action to abate a nuisance created by the operation of a corn elevator and sheller near plaintiff's residence, the court correctly charged on the burden of proof, a charge that, if the plant as operated was not a nuisance, the verdict should be for defendant, etc.,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

was not objectionable as shifting the burden of proof on defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 710; Dec. Dig. § 296.*]

10. NUISANCE (§ 36*) — ABATEMENT — JUDGMENT.

Where, in an action to abate a nuisance created by the operation of a corn elevator and sheller, the jury found that the plant could not be operated so as not to become a nuisance, the court did not err in refusing to reform the judgment so as to allow defendant to operate the plant.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 95; Dec. Dig. § 36.*]

11. NUISANCE (§ 25*) — ACTION TO ABATE—EVIDENCE.

In an action to abate a nuisance created by the operation of a corn elevator and sheller, the fact of its public convenience, or the necessities of the surrounding country is not a defense, and evidence that the plant is a public benefit to the people in the community is properly excluded.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 25.*]

Appeal from District Court, Collin County; J. M. Pearson, Judge.

Action by J. C. Coe and wife against J. T. Stark and another. From a judgment for plaintiffs, defendant J. T. Stark appeals. Affirmed.

J. R. Gough and Garnett & Hughston, for appellant. Cockrell, Gray & Thomas and R. C. Merritt, for appellees.

BOOKHOUT, J. Appellees, J. C. Coe and Julia Coe, husband and wife, filed their original petition in the district court of Collin county on the 30th day of July, 1908. They filed an amended petition December 26, 1908, and alleged substantially that they owned lots 2, 3, 4, and 5, in block 6, in the town of Allen, Collin county; that said lots front on the right of way of the Houston & Texas Central Railroad, and that they bought said lots from said railroad company; that they had used the same as a home for 10 years; that the defendants J. T. Stark and said Houston & Texas Central Railroad Company, under an agreement between them of which plaintiffs were not advised, in July and August, 1908, had erected immediately east from and within 130 feet a corn elevator and corn sheller for the purpose of storing and shelling corn; that since the erection thereof defendants had been operating same, and that in doing so the corn is unloaded from wagons at what is known as the "dump," which is at the south end of the plant, and is carried thence by machinery to the elevator and mill, where it is shucked and shelled, and the cobs and shucks are carried thence by machinery to a point 50 yards north of said plant and burned; that in so unloading the corn at the "dump" and in carrying it to the mill, and in shucking and shelling it, and in carrying the cobs and shucks to be burnt, large quantities of smoke, dirt, dust, ashes, and husks escape and permeate the air sur-

rounding said plant, and cover the premises contiguous thereto, and especially the home and premises of plaintiffs, and by reason thereof plaintiffs' home becomes filled with dirt, dust, smoke, ashes, and husks, and that the same cover the bedding, furniture, and floors and everything in their home, which greatly and materially affects the use and enjoyment of the comforts and convenience of their home, and it is thereby practically rendered uninhabitable; that in operating said plant great sounds and noises by reason thereof are given off, and become at times exceedingly obnoxious to plaintiffs, so much so that they cannot enjoy their home; that the mill and elevator is of great height, constructed of iron, and reflects the sun's rays and heat, and the use and comforts of the home for these reasons are greatly interfered with; that said plant was a permanent nuisance, and that by reason of its construction and operation their home had been injured and damaged in the sum of $1,500; that by reason of having to live in close proximity to said plant and breathe the dirt, dust, etc., that escapes from it and that are deposited in plaintiffs' home, the plaintiff Julia Coe had been injured and damaged in her health, which had become permanently injured, and that she had suffered severe mental and physical pain, and would continue to do so as long as she lived, and alleged such damages in the sum of $2,500. Plaintiffs prayed judgment for their damages which had already accrued, and that the nuisance be abated, and that defendants be permanently enjoined from operating said plant, and, in case the plant was not so abated, for their damages for the permanent injury to their premises in the sum of $1,500, and for such injury and damage done to Julia Coe's health in the sum of $2,500, and for general and equitable relief.

Defendant, Stark, answered by general demurrer and general denial, and that the defendant railway company formerly owned in fee a tract of about 140 acres where the town of Allen is now located; that prior to laying out said town and platting it into town lots it by deed of dedication set aside what is known as the railroad reservation, being a strip of land 250 feet wide extending entirely through the town of Allen; that in said deed of dedication it reserved the right, among other things, to erect on said strip of land warehouses, depots, or any other buildings, and to lease the same to persons for the erection of warehouses and for the purpose of shipping freight; that afterwards the town of Allen was platted with reference to said railroad reservation, and the lots were sold therein with reference to said reservation; that said deed of dedication had been duly filed for record long prior to the sale of any of said town lots, and especially long prior to the sale of the lots to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

plaintiffs; that said town of Allen is a small village situated in the midst of a very fertile and large agricultural district, which is very densely populated with farmers, who depend exclusively upon agriculture for a living; that the town of Allen is the only available and practical market for their produce; that it is necessary in order to create a market for said produce, and to render the vocation of agriculture in said community profitable, that there should be an adequate market for the sale of said produce; that without an efficient corn sheller and elevator the price of corn at Allen would be considerably depreciated on account of facilities to prepare the same for market, store the same, and handle it; that it is necessary that said elevator and sheller be located on or near said railroad reservation in order that the same might be profitably operated, and enable the owners thereof to pay the full market price for the produce; that the plaintiffs purchased said property with full knowledge, actual and constructive, of the purpose for which said railroad reservation was intended to be used, and with full knowledge that the necessities of the community surrounding Allen and of the citizens of Allen would demand that an elevator and corn sheller should be erected thereon; that the plaintiffs purchased said lots for a much less price than they would have been compelled to pay had said lots been situated in a more desirable locality, free from the noises, smoke, and dust which is necessarily incident, to some extent, in the operation of any industrial enterprise; that the buildings and machinery were erected in accordance with the latest, most modern, and approved appliances for the purpose of corn shelling, having due regard for the prevention of unnecessary noises and the escape of shucks, dust, etc., and for the destruction of all shucks and dust so far as is practicable; that its construction is such that it gives out little or no noise, and that the shucks are conveyed by long air-tight pipes from the sheller to the furnace, and the dust and trash, dirt, and other substances in the corn, except the cob and shucks, are carried by means of air suction from the sheller to the furnace by means of air-tight pipes; that it is necessary for the proper shelling and cleaning of corn to render it fit for market and to enable this defendant to pay the farmers the highest market price for their product; that the corn thus be shelled and cleaned, and that it is proper that in some manner the shucks and dust should be consumed; that the method employed by the defendant for the purpose of consuming the refuse from the corn is the most practical and least offensive that can be constructed; that the noise produced by defendant's plant is no more than the noise, smoke, and dust usually produced in that vicinity and neighborhood by the operation of railroad trains, corn-mills, corn shellers, gins, and other industries which have been for many years operated in that vicinity, and that he runs said plant only for the purpose of shelling corn brought from the country, which is but a few weeks of the entire year; that the location of said plant was the only practical one that could be obtained for the location of the same. Defendant denied that he had created a nuisance in any respect. The defendant railway company filed its answer, which is substantially like the defendant Stark's above. The cause was tried with the aid of a jury, and resulted in a verdict as follows: "We, the jury, find in favor of plaintiffs that the operation of defendant's corn-sheller plant and appliances therewith be abated, and we further find that plaintiffs recover nothing against the defendant, J. T. Stark, for damages to property or on account of sickness to Mrs. Julia Coe. We further find that the plaintiffs recover nothing against Houston & Texas Central Railroad Company." Said verdict was received and approved by the court, and it entered its order abating the operation of the corn-sheller plant and its appliances, and permanently enjoining and restraining defendant, Stark, from operating the same.

Appellant's motion for new trial having been overruled, he prosecutes this appeal.

It is insisted that the trial court erred in sustaining plaintiffs' special demurrer to appellant's pleading, in substance, that prior to the laying out and platting the town of Allen defendant railroad company owned 140 acres of land, which included said town, that said railroad company by its deed of dedication set aside what is known as the railroad reservation, being a strip of land 250 feet wide extending through said town, and that in said deed of dedication it reserved the right to erect on said strip of land warehouses, depots, or any other buildings, and to lease the same to persons for the erection of warehouses and for the purpose of shipping freight, and that appellant's corn-shelling plant was erected and is being operated upon said strip. There was no error in this ruling. The fact that the railroad company reserved the right to erect warehouses, depots, and other buildings on its right of way, and to lease the same to persons for the erection of warehouses, and for the purpose of shipping freight, would not give said railroad company a legal right to arbitrarily erect a corn-shelling plant on said right of way, and to so operate and maintain said plant as to become a nuisance, interfering with the comforts and use of plaintiff's home adjoining said right of way. Such reservation by the railroad company would not give a third party who leased a portion of said right of way a legal right to erect a corn-sheller plant and elevator, and to operate and maintain the same as to create a nuisance interfering with the enjoyments and comforts of a home adjoining the said right of way. Railway Co. v. Mott, 98 Tex. 91, 81 S. W.

286, 70 L. R. A. 579; Rainey v. Railway Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622; Daniel v. Railway Co., 96 Tex. 327, 72 S. W. 579; Railway Co. v. Anderson, 36 Tex. Civ. App. 121, 81 S. W. 782; Boyd v. Schreiner, 116 S. W. 100; Sherman Light Co. v. Belden, 123 S. W. 119, 27 L. R. A. (N. S.) 237.

Again, it is contended that where a person knowingly erects his residence and makes his home upon land contiguous to and adjoining a strip of land which has been dedicated to the uses and purposes set out in the deed of dedication he is not entitled to a decree abating the same as a nuisance; that it appears from the answer that plaintiffs bought their lots next to the strip of land after the record of such deed dedicating such strip of land for uses and purposes such as defendant's elevator and corn-sheller plant; and that for this reason the court erred in sustaining said exception to defendant's answer. The railroad company had the right to erect necessary warehouses and depots in handling its freight, and it, owning the fee in the land, had the right to lease it to be used in any manner not to injure the surrounding property. It could not by leasing the same confer upon the lessee authority to maintain a nuisance thereon, injuring and damaging the surrounding property and jeopardizing the health of the occupants. It is not contended that an elevator and corn-sheller plant is a necessary incident or appliance to the operation of the railroad. The law does not intend that the railroad company can take away the vested rights of the owners of property adjoining its right of way and render their property useless as a home by merely reserving the right to lease its right of way for legitimate purposes. In passing upon a similar question, our Supreme Court in the case of Railway Company v. Mott, 98 Tex. 91, 81 S. W. 286, 70 L. R. A. 579, says: "It is claimed by the appellant that since the conveyance of the right of way, made by Wood, to the railroad company, conferred upon appellant the right to establish upon the land so conveyed any business connected with said railway or incident thereto, and the stockpens being a business connected with, and incident to, the railroad, the railroad may by proper care maintain the pens, although they be a nuisance to those residing nearby. * * * At that time the stockpens were situated across the river. Under these circumstances those who sought the removal of the depot into the town could not have intended by using the words, 'business connected with or incident to the railroad,' to mean that the stockpens might be removed upon this right of way upon which the property of the donors abutted. Stockpens used for such purposes are not desirable neighbors for families. Looking at all the circumstances that surround the transaction, and the language used in the conveyance, we think

it was not intended to authorize the railroad company to establish a nuisance in the midst of the residence portion of that town. The fact that the property was not then occupied does not mitigate against this construction," etc. In the instant case the manifest purpose in subdividing and selling its lands by the railroad to citizens was that the lands so sold would be used for homes by the purchasers, and to permit a nuisance such as is shown to exist in this case would defeat this purpose and render the property thus sold useless for the purpose of a home.

Error is assigned to the court's action in refusing appellant's requested charge No. 1, instructing a verdict for defendant. Mrs. J. C. Coe, plaintiff's wife, testified: "I have lived at my present residence at Allen about 16 years. We bought the four lots upon which our residence is situated and improved them. Our residence is west of the railroad, and faces the east, fronts the railroad. * * * That elevator or building was constructed there last July. This is the second season it has been operated. When they dump the corn, there is a great deal of dust and dirt, more especially this year. * * * That dust and dirt and smoot flies into the house, into the openings if they are open, and into the south gallery on the L part of the house, and that occurs most every day they dump. I have noticed the atmosphere while the corn was being dumped, and I could see fine dust in it. After the corn is dumped, * * * it goes over into the elevator and is shelled. The sheller is located north of the dump and east of our house. When they are shelling, there is a lot of dust from the elevator, and it just fills the house full of dust, just covering the furniture in the room, until a white counterpane is more black than white, if the wind is in the right direction; that is, if the wind is in the east or southeast. I get a great deal of dust this year from where they are baling the shucks. * * * They set the shucks afire only once this year. When the wind is in the northeast, we would get a lot of smoke and dust and ashes, and, when they burned the shucks, it was very disagreeable. * * * When the wind is in the east and they are baling those shucks, we cannot see anything for the dust. It just pours in. When the corn is being shelled and the wind is from the east or southeast, we get some dust all the time from these openings. The elevator is much higher than my house, and I imagine it is as high again as my house. I think it is about 60 feet high. When the plant is being operated, we hear a roaring like an engine, * * * and in dumping it makes a noise (the building being made of sheet iron), and in shelling it makes a noise, and in going through these pipes. When the pipe is being operated, the effect of the noise which it makes on people is bad. * * * You would think it is hail sometimes, one part of that is tin that it goes through, and

the noise is so much worse when it goes through this, than when going through the wooden part; that is, it makes a rattling or roaring like hail. The dust, dirt, and smoke just ruins the furniture, and everything in the house in the furniture line. I cover them over with sheets. * * * At night I take them out, and we don't live in the front part of the house during the shelling season. Before the shelling season begun, we stayed on the front gallery, but we haven't had the pleasure of using it lately. * * * We have not occupied the front gallery and those front rooms since they began shelling. We could not do it because there was so much noise and dust and heat from the metal that it would scorch your face. We have just caught the water off the house in barrels since this sheller has been in operation, because it is too dusty and dirty to let in the well. The water we would catch off of our house is dark, red, and dirty looking, and has got dirt and shucks in it from where they bale the shucks. * * * We cannot use the water for drinking. We had never been bothered with that before in catching our water. * * * I cannot live there because the dust is so bad it just keeps me sick. Since the plant has been in operation, we get our water over at a neighbor's, Mrs. Stansell's, and carry it in buckets. My family consists of myself and Mr. Coe. * * * He is 75 years old, and I am 65. I had a great many rigors or dust chills from this dust, and a severe cough caused by the dust."

The evidence shows that there were a number of residences immediately north and immediately south, and adjoining plaintiff's premises, also that Mrs. Leach lived adjoining the right of way, east of the elevator plant. The distance from the elevator to Coe's house was 166 feet. The elevator was 60 feet high, made of iron and wood, and covered on the outside with galvanized iron. The great preponderance of the evidence showing that the corn sheller in its operation greatly affected the use, comfort, and enjoyment of plaintiff's home and the health of one of the occupants, the court did not err in refusing to instruct a verdict for defendant.

Nor did the court err in refusing to give appellant's special charge reading as follows: "The law does not grant relief by injunction to restrain a temporary injury where the person injured has an adequate remedy at law to recover damages for such temporary injury; so that, if you should find and believe from the evidence that dirt and dust or either entered the plaintiff's house from the defendant's corn-sheller plant, but if you find that the injury caused thereby to plaintiff's property and to plaintiff's health, or to the health of plaintiff's family (if you find that plaintiff's property or his health or the health of some member of his family were in-

jured by reason of dirt or dust caused from the operation of defendant's corn-sheller plant entering his house) were only temporary injuries, and were not permanent injuries, then you are instructed that the plaintiff is not entitled under the law to have the operation of defendant's corn-sheller plant abated as a nuisance if the defendant is financially responsible, and, if you so find and believe, you will find for the defendant on this issue." A person aggrieved by reason of a nuisance which seriously affects his health and life and the comfortable enjoyment of his home can call to his aid the equitable powers of the court to enjoin and abate the nuisance, and it makes no difference if the person causing the nuisance is financially responsible for the damage incurred. The injury to plaintiff's health and the deprivation of the use of his home was an irreparable injury, and for which plaintiff had no adequate remedy at law. Sayles' Ann. Civ. St. 1897, art. 2989, subd. 1; Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Mitchell v. Burnett, 122 S. W. 537, 538.

On the trial certain witnesses testified to the effect that if the dirt and dust entered plaintiff's residence so that it could be seen and felt, and that you could mark in the same, and that it would settle upon the beds, walls, and furniture to such an extent that it would discolor or blacken rags which in some instances were exhibited, the witness in your (their) presence, and in some instances dirt and dust which was claimed to have been taken from the beds in said house was shown the witnesses, it would affect the rental value of said premises. The appellant, by a charge, sought to have this evidence withdrawn from the jury, because it is contended it was the opinion of the witnesses, and the evidence was not the subject of expert testimony. The charge was refused, and the court's action in this respect is made the basis of the fifth assignment. There was no error in this action of the court. The evidence having been admitted without objection, it was not error to refuse a charge withdrawing the same from the consideration of the jury. We think it a matter of common knowledge that dirt and dust entering a dwelling house under the conditions as set forth in the requested charge would decrease its rental value.

Error is assigned to the court's action in giving at the request of plaintiff a special charge to the effect that the jury will not consider the fact of convenience or inconvenience of the public in anyway whatever in determining whether or not said sheller and plant should be abated. It is contended that the convenience or inconvenience of the public will be considered in determining whether or not a public utility will be abated, and the charge in this respect stated that as a principle of law which is not law, and,

further, that this charge is on the weight of evidence. Neither the convenience nor the inconvenience of the public could affect plaintiff's right to have a nuisance abated. Plaintiff's private property could not be destroyed, because of public convenience without first compensating him for his property. Const. art. 1, § 17; Railway Co. v. Edrington, 100 Tex. 496, 101 S. W. 442, 9 L. R. A. (N. S.) 988; Boyd v. Schreiner, 116 S. W. 100.

The eighth and ninth assignments of error complain of the second paragraph of the court's charge, which reads as follows: "You are further instructed that the erection and operation of a corn sheller and other things connected therewith does not in and of itself constitute a nuisance so long as the same does not materially interfere with the comfortable enjoyment of plaintiff's home as a private residence, or does not by reason of dust, and dirt, etc., materially affect the health of the occupants of said house. Therefore if you should find and believe from the evidence that defendant's cornsheller plant and appliances connected therewith can be so run and operated that the same will not materially interfere with the enjoyment of the comforts of said home, and so as to not materially affect the health of the occupants of said home, then you are instructed that under the law you could not abate said corn-sheller plant; but, on the other hand, if you should find and believe from the evidence that defendant's cornsheller plant from the manner of its construction and operation does materially affect the enjoyment of the comforts of plaintiff's home, if it does, or does materially affect and threaten the health of the occupants thereof, if it does, and you further find and believe from the evidence that it is not possible or practicable to operate said plant without materially affecting the health or comfort of the occupants of plaintiff's home, then you are instructed if you so find and believe you will return a verdict abating said plant." It is contended that said charge is misleading and on the weight of evidence and without evidence to support it; that so much of it as submitted to the jury the supposed issue as to whether or not the plant could be operated and run in the future "so that it would not materially interfere with the enjoyment of the comforts of the home or materially affect the health of the occupants of said home" is misleading and erroneous, and there was neither pleading nor evidence to support such issues; that the jury should have been confined to what had transpired as shown by the evidence, and not permitted to decide what could or would be done hereafter; that so much of it as submits to the jury as to whether or not it is possible or practicable to operate the plant without materially affecting the health or comfort of the occupants of plaintiff's home is neither supported by the pleadings or evidence; that the charge is on the weight of

evidence. These contentions are not sustained.

The court very properly submitted the issue to the jury in its charge as to whether or not said plant could be so run as to not materially interfere with the enjoyment of the comfort of said home, and so as to not materially affect the health of the occupants of said home. If said plant could have been so repaired or remedied that the same could have been operated without becoming a nuisance interfering with the use of the home of plaintiff or the health of the occupants thereof, then it should not have been abated. The charge complained of was beneficial to defendant, in that it not only required the jury to find that said plant was a nuisance, but the jury under said charge had to further find that the defendant could not in the future so operate the plant by any kind of change or repairs or improvements as to prevent the same becoming injurious to the home or the health of its occupants. There was both pleading and evidence to the effect that the plant was a modern equipment and could not be improved upon, and that there was no way to prevent dust escaping and entering plaintiff's home.

The tenth and eleventh assignments assign as error the sixth paragraph of the court's charge, reading as follows: "On the other hand, if you find and believe from the evidence that plaintiff's (defendant's) plant as operated was not a nuisance, then you will find that the same be not abated, and, if you further find and believe from the evidence that the sickness of Mrs. Coe was not produced by the operation of defendant Stark's corn-shelling plant and appliances connected therewith, then you will find in favor of the defendant on this issue, and, if you further find and believe from the evidence that plaintiff's property has not been permanently damaged by the erection and operation of defendant's plant, then you will find in favor of defendant on this issue." It is insisted that this paragraph shifts the burden of proof, and places the same upon the defendant. The charge of the court must be construed as a whole. The court in other parts of his charge correctly charged on the burden of proof. The paragraph complained of taken in connection with the whole charge does not constitute error.

Again, it is contended that so much of said charge as submitted the issue as to whether plaintiff's property had been permanently damaged by the erection and operation of defendant's plant is erroneous, and was misleading, in that there was no proof that the property had been permanently damaged, and the same is a charge on the weight of the evidence. This criticism is not tenable. There was evidence tending, and which was sufficient to support a finding, that plaintiff's property was permanently damaged by the erection and operation of appellant's corn sheller.

The judgment is responsive to the pleadings, and is supported by the great weight of the evidence. The evidence shows that appellant's plant when operated is a recurring nuisance, and by reason of the dust and dirt, even when there is no wind, the comfortable enjoyment of appellee's home is materially interfered with.

It is contended that the court erred in not modifying the judgment rendered, and in not reforming the same so as to permit defendant to operate his plant and its appliances if the defendant made the changes and improvements set out in the eleventh and twelfth grounds of his amended motion for a new trial. This contention is without merit. The jury having found that said plant could not be operated so as not to become a nuisance, the court did not err in refusing to reform the judgment allowing appellant to operate the plant.

There was no error in the court's action in refusing to permit the defendant to prove by the witness Price Bush that in his judgment the defendant's corn-sheller plant was a public benefit to the people living around Allen. The fact of public convenience or necessity of surrounding country is no defense to an action to abate a corn sheller which is a nuisance to adjoining landowners. Rainey v. Railway Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622; Townsend v. Norfolk, 105 Va. 22, 52 S. E. 970, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Am. & Eng. Ann. Cas. 558.

We have carefully considered the assignments of error presented in appellant's brief not here discussed, and, because in our opinion they are not well taken, they are overruled.

Finding no error in the record, the judgment is affirmed.